# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**THOMAS M. DIXON**
Dixon, Wright & Associates, P.C.
Osceola, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JANINE STECK HUFFMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACK D. TILLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1110-EX-961 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, IDWD U.I. CLAIMS | ) | |
| ADJUDICATION, and the TOWN | ) | |
| OF WALKERTON | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM REVIEW BOARD OF THE
INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
Case No. 11-R-4106

**July 3, 2012**

**OPINION – FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jack D. Tiller[1] appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Board") in favor of IDWD U.I. Claims Adjudication ("IDWD") on IDWD's claim that Tiller had falsified information to IDWD in order to receive unemployment benefits. Tiller raises two issues for our review, which we consolidate and restate as whether the Board's decision is erroneous. We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

On July 27, 2011, the Administrative Law Judge ("ALJ") held an evidentiary hearing on IDWD's claim that Tiller had falsified material facts in his requests for unemployment benefits. The next day, the ALJ entered the following findings of fact:

> Each time the claimant applied for unemployment benefits, the claimant went online to create an account and indicated acceptance of the User Agreement. The claimant agreed to report all earnings from employment or self-employment regardless of source, including part[-]time employment. The claimant was required to agree that he must report the gross earnings of any earnings and that those earnings must be reported on the voucher for the week in which the work was performed. The claimant also acknowledged that he is responsible for protecting his password and not to give it to anyone.
>
> For each an[d] every week the claimant filed a voucher the claimant responded "yes" to the question: "Could you have worked week ending _____ if work was offered to you?" The claimant certified he has reported "any and all work, earnings, and self-employment activity for this week, even though I (the claimant) may not have yet been paid." The claimant also certified that he has reported anything that interfered with the claimant's ability to work full-time that week. The claimant certified that

---

[1] No party to this appeal has filed an "affirmative request pursuant to Administrative Rule 9(G)(1.2) to continue the exclusion from public access the identities and information confidential under the statute [Indiana Code Section 22-4-19-6] and rule." Recker v. Review Bd., 958 N.E.2d 1136, 1138 n.4 (Ind. 2011). Thus, we will use the parties' names.

[2] Tiller's statement of facts in his appellate brief is not consistent with our standard of review, as required by Indiana Appellate Rule 46(A)(6)(b).

"all answers and information given in this application for benefits are true and accurate."

A claimant cannot file a weekly claim unless that claimant has first acknowledged that he/she has received, and understood, a copy of the unemployment insurance claimant handbook.

On February 8, 2010, the claimant filed his initial claim for unemployment benefits. The claimant was assigned a benefit year ending date of January 29, 2011. For weeks ending February 6, 2010[,] through August 7, 2010, the claimant filed his weekly claim. During this entire period of time the claimant was employed as a sales associate at Advance Stores Company[,] Inc., earning $9.00 per hour. The claimant earned wages between $184.00 and $314.00 per week. On each and every weekly claim the claimant answered "no" to the question: "Did you work?" The claimant's weekly benefit amount was $390. The claimant exhausted his claim by August 8, 2010.

Under his initial unemployment claim, the claimant was paid a total sum of $9,750. The claimant was also paid for each and every week during his initial claim the sum of $25 per week, Federal Additional Compensation.

On August 15, 2010, the claimant filed his claim for extended benefits (EUC). The claimant's benefit year ending date remained January 29, 2011. From August 14, 2010[,] until the expiration of the claimant's benefit year ending[] January 29, 2011, the claimant worked four (4) weeks for DPW Transportation. The claimant also worked 23 weeks for Advance Stores Company[,] Inc[.] as a sales associate earning $9.00 per hour. During those 23 weeks the claimant earned wages between $41 and $413. The claimant was paid the sum of $390 per week extended benefits for 21 weeks, totaling $8,190. In addition thereto, the claimant received [unreadable] weeks of Federal Additional Compensation, totaling $400. Between February 8, 2010[,] and August 8, 2010[,] the claimant disclosed none of the wages earned from DPW Transportation[,] Inc[.] or from Advance Stores Company[,] Inc.

On February 6, 2011, the claimant opened his third claim and qualified for a regular claim. The claimant was assigned a benefit year ending date of January 28, 2012. Between February 6, 2011[,] and March 14, 2011, the claimant disclosed none of his wages earned from Advance Stores Company[,] Inc. After March 14, 2011, the claimant disclosed some of the wages earned from Advance Stores Company[,] Inc. The claimant's benefit payments were reduced. Thereafter, the claimant failed to disclose any wages earned for a period of 6 weeks. Between calendar week ending

3

March 19, 2011[,] and calendar week ending April 20, 2011, the claimant earned weekly wages for each and every week with the exception of week ending April 9, 2011. The claimant earned wages between $86 and $142. Thereafter, the claimant continued to file claims and disclose some wages earned at Advance Stores Company[,] Inc.

The claimant's wife did the computer work for claimant, filing for unemployment benefits and filing weekly vouchers. At all times relevant, the claimant knew that he was applying for unemployment benefits and that he was filing weekly vouchers. At all times relevant, the claimant's wages were paid by direct deposit to his and his wife's joint checking account.

Appellant's App. at 28-29 (citations omitted). Based on those facts, the ALJ concluded that Tiller had "failed to disclose or falsified a material fact" and, therefore, he was "liable to repay to the Department the total overpayment of $24,247.00, plus penalty in the sum of $10,245.75," pursuant to Indiana Code Section 22-4-13-1.1. Id. at 29-30.

Tiller appealed the ALJ's decision to the Board and asked that the Board consider additional evidence not before the ALJ. The Board declined to consider the additional evidence and adopted and incorporated the ALJ's order. This appeal ensued.

## DISCUSSION AND DECISION

Tiller appeals the Board's decision against him. As our supreme court has stated:

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." However, the statute also includes explicit provision for judicial review in language virtually identical to that found in provisions for review of other administrative agency actions. Indiana Code § 22-4-17-12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under this standard courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law. Courts uniformly recognize that propositions of law, such as the construction of the statute, are for the court to determine. . . .

Review of the Board's findings of basic fact are subject to a "substantial evidence" standard of review. In this analysis the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings.

The Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. These questions of ultimate fact are sometimes described as "questions of law." They are, however, more appropriately characterized as mixed questions of law and fact. As such, they are typically reviewed to ensure that the Board's inference is "reasonable" or "reasonable in light of [the Board's] findings."

McClain v. Review Bd. of the Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1316-17 (Ind. 1998) (citations omitted; alterations original).[3]

Tiller first contends that the Board erred when it considered only the "stipulated" facts before the ALJ and did not "specifically address or resolve" the following factual issues Tiller raised to the Board: (1) whether IDWD knew of Tiller's employment "from the outset" despite his claims for unemployment benefits; (2) whether Tiller was "computer illiterate"; (3) whether "there was a reasonable explanation for [Tiller's] wife's sporadic disclosure of part[-]time wages"; (4) whether Tiller "was telling the truth when he testified that he would never try to withhold information from IDWD or take benefits to which he was not entitled"; and (5) whether he knew that incorrect information was reported to IDWD. Appellant's Br. at 12-14.

The decision to accept additional evidence is a decision left to the discretion of the Board. "The rule requires a party offering additional evidence to show good cause why such evidence should be accepted and good reason why it was not introduced before the ALJ." Smitty's Painting, Inc. v. Review Bd. of Workforce Dev., 908 N.E.2d 244, 247

---

[3] We decline Tiller's invitation to ignore McClain and instead apply a de novo standard of review.

5

(Ind. Ct. App. 2009). Here, Tiller's argument is premised on his belief that the additional evidence, if credited to him, would have negated the ALJ's conclusion that he knowingly failed to disclose amounts earned during Tiller's benefit and extended benefit periods. See Ind. Code § 22-4-13-1.1.

We have no reason to assume the Board would have credited the additional evidence in the same way Tiller does. The undisputed evidence demonstrated that Tiller earned wages during his benefit and extended benefit periods and that his wife, acting on his behalf, knew of those wages but did not disclose them to IDWD. The undisputed evidence also showed that Tiller knew of his continuing obligation to report earnings to IDWD, regardless of any knowledge IDWD may have had of Tiller's employment at the outset of the process. And it would be futile to require such disclosures if claimants could circumvent them by stating they were computer illiterate while their agents were ignorant of their actual income. The Board did not abuse its discretion when it did not consider Tiller's additional evidence.

Tiller also asserts that the forfeiture and penalty provisions of Indiana Code Section 22-4-13-1.1 constitute a taking without due process of law. Tiller does not dispute that, pursuant to that statute, the Board imposed the proper forfeiture and penalty amount against him. Neither does Tiller suggest that those amounts are unconstitutionally excessive.

Tiller's argument that he was denied due process before the assessment of his fines is without merit. "[T]he fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Perdue v.

6

Gargano, 964 N.E.2d 825, 832 (Ind. 2012). Here, Tiller received actual notice of the ALJ's initial hearing on IDWD's claims, he requested and received a continuance, and he received actual notice of the continued hearing. At that hearing, he presented evidence in his defense and had the opportunity to cross-examine witnesses. He further appealed the ALJ's decision to the Board and had the opportunity to request the Board to consider additional evidence. In short, he received all the process he was due. We affirm the Board's decision.

Affirmed.

RILEY, J., and DARDEN, J., concur.