# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROBERT A. HICKS**
Macey Swanson and Allman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

KEVIN PERRY,               )
                          )
    Appellant,            )
                          )
    vs.                   )    No. 93A02-1208-EX-649
                          )
UNEMPLOYMENT INSURANCE     )
REVIEW BOARD OF THE INDIANA )
DEPARTMENT OF WORKFORCE    )
DEVELOPMENT and           )
                          )
INDIANA DEPARTMENT OF WORKFORCE )
DEVELOPMENT UI CLAIMS      )
ADJUDICATION CENTER,       )
                          )
    Appellees.            )

APPEAL FROM REVIEW BOARD OF THE
INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
Case No. 12-R-02226 (12-03692)

April 8, 2013

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kevin Perry[1] appeals the order of the Review Board ("Review Board") of the Indiana Department of Workforce Development, affirming the findings and conclusions of the Administrative Law Judge ("ALJ") and terminating Perry from the Trade Adjustment Assistance ("TAA") training program. Perry presents three issues for review, which we consolidate into a single issue, namely, whether the Review Board's decision affirming the termination of Perry's participation in the TAA training program is erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant facts as found by the ALJ and adopted by the Review Board are as follows:

> FINDINGS OF FACT: The Administrative Law Judge makes the following findings of fact: The Claimant worked for Columbus Components. The Claimant separated from the job on June 30, 2009. On September 1, 2009, the Department of Labor certified workers for federal benefits in the form of Trade Adjustment Assistance (TAA) and Trade Readjustment Allowance (TRA) in certification #70779. Workers were potentially eligible for job search allowance, relocation allowance, training benefits, and an income support in the form of TRA.
>
> The Claimant submitted an application and the Dislocated Worker Unit[2] subsequently approved [Perry]'s application to participate in the TAA program. The training program [that Perry] participated in was the Accounting program within the Accounting and Business Administration Department at Ivy Tech Community College. [Perry] attended courses at

---

[1] Although the parties used Perry's initials in their briefs, the parties used full names in the administrative proceedings below. And there is no evidence in the record that any party to this appeal made an "affirmative request pursuant to Administrative Rule 9(G)(1.2)" to exclude from public access the identities and information confidential under Indiana Code Section 22-4-19-6 and the rule. Recker v. Review Board, 958 N.E.2d 1136, 1138 n.4 (Ind. 2011). Thus, we use the parties' names.

[2] The Dislocated Worker Unit is the state agency administering the TAA program.

the Columbus, IN campus that is nineteen (19) miles from [Perry]'s home. The start date of the training was May 24, 2010[,] and scheduled to end on December 21, 2012. The approved training application makes no mention of [Perry]'s ability to take online courses. [Perry] also signed a Participant Agreement. <u>Part five (5) of the agreement obligates [Perry] not to deviate from the program or curriculum without the written consent of any WorkOne representative</u>.

On November 7, 2011, [Perry] requested, through his assigned Case Worker, Nancy Steinkamp, a modification in the training program. [Perry] requested to attend all courses online during the Spring 2012, Summer 2012, and Fall 2012 semesters. The Dislocated Worker Unit handles modification requests on a case-by-case basis. In making its decision, the Dislocated Worker Unit defers [to] and considers the University's opinion on whether a claimant who applies for such modification will be successful in completing the program.

Marian Canada chairs the Accounting and Business Administration department. On November 9, 2011, Ms. Steinkamp emailed Ms. Canada to obtain Ms. Canada's opinion on whether [Perry] could be successful with online class attendance. Ms. Canada did not feel comfortable agreeing to allow [Perry] to take classes online.

Prior to [Perry] and Ms. Steinkamp submitting the modification request, [Perry] registered for the spring 2012 semester with all online courses. Ms. Steinkamp informed [Perry] on October 25, 2011[,] that [he] could not register for online classes until the Dislocated Worker Unit made a final decision on the request. However, [Perry] did not change the courses. On January 25, 2012, the Department issued a warning letter informing [Perry] that his TAA benefits were at risk and under review. The letter informed [Perry] that [he] modified the training plan without authorization and that any non-approved deviation from the original plan may place Trade-related benefits at risk. By this time, the class offerings for the Spring Semester 2012 were filling up at the Columbus campus. Course offerings were available at the locations greater than fifty (50) miles from [Perry]'s home. [Perry] could have enrolled in those courses at other campuses and apply for travel assistance to cover associated costs to travel to various campuses. However, [he] remained enrolled in the online courses.

The Department issued a Request for TAA Exit on February 21, 2012. The Department exited [Perry] from the TAA program for deviating from the approved training plan in violation of the criteria set forth in 20 CFR 617.

CONLCUSIONS OF LAW: This case is not about whether the Department and the Dislocated Worker Unit allows funding for [a] TAA participant

who choose[s] to complete the training program through online education. The Dept. of Labor Training and Employment Guidance Letter (TEGL) 09-05 provides:

> Under the TAA program, the Department [of Labor] has determined that distance learning may be considered "classroom training" when the degree of certificate received is equivalent to what would have been received if the training had been conducted on campus. This interpretation expands the types of approvable classroom training to include distance learning, where a participant completes all or part of an educational or vocational program in a location far away from the institution hosting the training program. For distance learning, the final degree or certificate conferred must be equivalent in the content and standard of achievement to the same program completed on campus or at an institutional training location. When the above condition is met, the Department will recognize that the training is of the type that normally takes place in an interactive classroom setting; therefore, it satisfies the requirement of the regulations and statutes. This is a new standard that replaces the four conditions in TEGL 7-00.
>
> In addition, in order for distance learning to be approved, all criteria for training approval found at 20 DFR 617.22 must be met in the same way as in any other training program.

(Emphasis added). TEGL 0905, December 12, 2005.

The issue in this case is whether [Perry] is eligible to continue to participate in the TAA program after a modification request was submitted and subsequently denied by the Dislocated Worker Unit, and [Perry] deviated from the approved training plan.

Eligibility for Federal Trade Adjustment Assistance (TAA) funding is governed by 20 C.F.R. § 617.22. 20 C.F.R. § 617.22 confers discretion to the state agency to determine how the program will be administered. [Perry] signed a Participant Agreement form issued by the Department agreeing to not deviate from the program or curriculum without the written consent of any WorkOne representative. The participant agreement is clear that failure to fully participate as outlined in the participant agreement might result in the loss of benefits or repayment of the benefits received. [Perry] did not receive permission to take all online courses. Further, Ms. Steinkamp specifically informed [Perry that] he was to wait to register for online courses until after the Dislocated Worker Unit approved [Perry]'s

4

modification request. In fact, the Department denied the request, and [Perry] failed to make the necessary changes to stay in compliance with the original training plan.

Accordingly, the Department properly exited [Perry] from the training program due to [his] unauthorized modification to the training program and failing to meet the criteria contained in 20 CFR § 617.22.

Appellant's App. at 1-3 (some emphasis in original, citations omitted). Perry now appeals.

## DISCUSSION AND DECISION

"Reviews of trade adjustment assistance determinations are 'subject to review in the same manner and to the same extent as determinations and redeterminations under the applicable State law, and only in that manner and to that extent.'" R.D. v. Review Bd. of Ind. Dep't of Workforce Dev., 941 N.E.2d 1063, 1067 (Ind. 2010) (quoting 20 C.F.R. § 617.51(a)). "In other words, a denial of training benefits is reviewable in state court as if it had been a denial of conventional unemployment benefits." Id. (citing 19 U.S.C. § 2311(d) (1988)). Our supreme court has explained the standard of review in conventional unemployment benefit cases:

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." However, the statute also includes explicit provision for judicial review in language virtually identical to that found in provisions for review of other administrative agency actions. Indiana Code § 22-4-17-12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under this standard courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law. Courts uniformly recognize that propositions of law, such as the construction of the statute, are for the court to determine. . . .

5

Review of the Board's findings of basic fact are subject to a "substantial evidence" standard of review. In this analysis the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings.

The Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. These questions of ultimate fact are sometimes described as "questions of law." They are, however, more appropriately characterized as mixed questions of law and fact. As such, they are typically reviewed to ensure that the Board's inference is "reasonable" or "reasonable in light of [the Board's] findings."

Tiller v. Review Bd. of the Ind. Dep't of Workforce Dev., 974 N.E.2d 478, 481 (Ind. Ct. App. 2012) (quoting McClain v. Review Bd. of the Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1316-17 (Ind. 1998) (citations omitted; alterations original)).

Perry contends that the Review Board erred when it affirmed the ALJ's findings and conclusions regarding his termination from the TAA training program. The facts are not in dispute. Perry was approved for the TAA training program and executed a participant agreement. The TAA program was administered through the Indiana Department of Workforce Development ("DWD") and the Columbus WorkOne office. Perry was approved to obtain an "Associate of Applied Science" degree from Ivy Tech, specifically in "Accounting." Exhibits at 41A. The Participant Agreement provides, in relevant part:

The above training program [of "31 weeks + WP week"] has been approved, and a contract is being executed on your behalf with the training provider. As the beneficiary of this agreement and contract, you agree to the following:

1. I agree to undertake this program in good faith with the intention of successfully completing the specified training program.

* * *

4. I agree to meet with my local WorkOne Staff monthly during school to report progress and/or difficulties. I agree to provide a schedule during the

6

first week of each semester and a grade report within two weeks of the completion of each semester.

5. I agree not to deviate from the program or curriculum without the written consent of any WorkOne representative. I am not permitted to drop classes. I must be enrolled as a full[-]time student.

* * *

8. I have received a copy of the student handbook and [Trade Readjustment Allowance] benefit rights overview and agree to comply with all program rules as outlined.

Exh. at 42. Perry was also given a TAA Student Handbook ("Handbook"). The Handbook distinguished classroom training from employer-based training. With regard to Classroom training, which "may include Remedial Training[,]" Exh. at 89, the Handbook provides, in relevant part:

Classroom Training

Classroom training is instructor[-]led training. Approved Classroom training includes the costs of tuition, course fees, <u>required</u> books and supplies, and other items/services mandated/itemized by the training institution for all/any student (not just your instructor). . . .

Distance (Learning) Training

The U.S. Department of Labor (USDOL) permits distance learning (e.g. on-line) when the degree or certificate received is equivalent to traditional classroom training.

When considering Distance (Learning) Training, as an option, keep in mind your responsibility to coordinate with your distance learning providers and your WorkOne Counselor to ensure that all parties understand the specific requirements or milestones of the distance learning program with respect to "attendance" and grading—including maintaining full-time status (when mandated), monthly reporting and validation of plan's completion date. Failure to do so may place all related benefits at risk.

Exh. at 89-90.

The ALJ found that Perry's WorkOne Case Manager, Steinkamp, had informed him on October 25, 2012, that he could not register for online courses until after he had filed a request to modify his training plan and he had received approval for that modification request. However, at that time, Perry had already registered for online courses for the Spring semester of 2012. And he did not change his registration to classroom courses after talking with Steinkamp in October. On January 25, 2012, the Department sent a letter to Perry, notifying him that his TAA benefits were "at-risk and under review" because, as he had been informed by telephone, he had, "without authorization, . . . modified [his] training plan." Exh. at 45. Classroom courses on campuses greater than fifty miles from Perry's home were still available, and Perry could have applied for travel assistance to cover travel costs, but he remained enrolled in the online courses. On February 21, 2012, the Department issued a Request for TAA Exit on the ground that Perry had "[m]odified [his] program without authorization" by enrolling in online courses without prior authorization. Exh. at 76. The evidence in the record supports these findings, and the findings support the determination that Perry modified his training program without prior authorization and that such was a proper basis for termination from the TAA program.

Perry disputes the conclusion that his enrollment in online training courses constituted a modification of his training plan so as to require prior authorization. In

support he cites Training and Employment Guidance Letter ("TEGL") 9-05.[3]  That

directive, issued in 2005 by the Department of Labor, provides in part:

> Under the TAA program, the Department [of Labor] has determined that distance learning may be considered "classroom training" when the degree of certificate received is equivalent to what would have been received if the training had been conducted on campus.  This interpretation expands the types of approvable classroom training to include distance learning, where a participant completes all or part of an educational or vocational program in a location far away from the institution hosting the training program.  For distance learning, the final degree or certificate conferred must be equivalent in the content and standard of achievement to the same program completed on campus or at an institutional training location.  When the above condition is met, the Department will recognize that the training is of the type that normally takes place in an interactive classroom setting; therefore, it satisfies the requirement of the regulations and statutes.  This is a new standard that replaces the four conditions in TEGL 7-00.
>
> In addition, in order for distance learning to be approved, all criteria for training approval found at 20 CFR 617.22 must be met in the same way as in any other training program.

Appellant's App. at 2 (citing TEGL 9-05) (emphasis in original); see also

http://wdr.doleta.gov/directives/attach/TEGL09-05.pdf (last visited March 19, 2013).

The directive issued by the Department of Labor in TEGL 09-05 provides that

online instruction may be considered classroom training.  However, the language in

TEGL 09-05 is in terms of "distance learning, where a participant completes all or part of

an educational or vocational program in a location far away from the institution hosting

the training program."  Appellant's App. at 2 (citing TEGL 9-05) (emphasis in original);

---

[3]  In its brief, the Review Board bases its argument in part on TEGL 07-00.  That directive was rescinded and replaced by TEGL 09-05.  See http://wdr.doleta.gov/directives/attach/TEGL09-05.pdf (last visited March 19, 2013).

see also http://wdr.doleta.gov/directives/attach/TEGL09-05.pdf (last visited March 19, 2013). Here, there is evidence that Perry could have participated in interactive classroom training within an easy distance from his home had he timely registered for such classes. And even after he had been notified that his TAA benefits were at risk, classroom courses were still available within a reasonable distance from his home, but Perry maintained his enrollment in the online courses. As noted by the ALJ and affirmed by the Review Board, the issue presented is not whether online coursework is permissible under certain circumstances in the TAA program. Rather, the issue is "whether Perry was eligible to continue to participate in the TAA program after a modification request was submitted and subsequently denied by the Dislocated Worker Unit and [Perry had] deviated from the approved training plan." Appellant's App. at 2. Here, the evidence supports the findings, and the findings support the conclusion, that Perry deviated from his approved training program without prior authorization. Thus, we cannot say that the Review Board erred when it affirmed his termination from the TAA program.

Perry also contends that the DWD erred when it denied his request to deviate from his approved TAA training program. But, as explained above, Perry modified his training plan without prior authorization and made no attempt to revise his registration to be in compliance with the approved plan even after Steinkamp advised him to do so well before the semester started. On these facts, and as explained above, we cannot say that the Department of Workforce Development erred when it denied his modification request.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

10