**FOR PUBLICATION**



**FILED**

Oct 29 2013, 5:41 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL DOGGETT**
Hart Bell, LLC
Vincennes, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHAWN TELLIGMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1304-EX-303 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT AND INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT UNEMPLOYMENT | ) | |
| INSURANCE CLAIMS ADJUDICATION, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause Nos. 13-R-484, 13-R-485, 13-R-486

**October 29, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Shawn Telligman appeals a decision by the Review Board of the Indiana Department of Workforce Development (the "Board") in favor of Indiana Department of Workforce Development Unemployment Insurance Claims Adjudication ("IDWD") on IDWD's claim that Telligman failed to disclose or falsified information to IDWD in order to receive unemployment benefits, that he received certain benefits to which he was not entitled, and that he is liable to repay IDWD the benefit overpayment amounts together with applicable penalties and interest. Telligman raises two issues which we restate as whether the Board erred in finding that he knowingly failed to disclose or falsified any fact that would disqualify him from receiving benefits, reduce his benefits, or render him ineligible for benefits or extended benefits, and whether the Board abused its discretion in denying his request to submit additional evidence. We affirm.

FACTS AND PROCEDURAL HISTORY

Telligman filed claims for unemployment benefits starting in October 2009 and received those benefits for certain weeks between December 2009 and December 2010. Following an investigation, an investigator with the IDWD issued three determinations of eligibility notifications on November 15, 2012, finding that Telligman knowingly failed to disclose or falsified material facts and that Telligman had filed vouchers for and received unemployment benefits for weeks during which he had been employed and had employment earnings. Telligman appealed the determinations. On January 16, 2013, a hearing was held before an administrative law judge (the "ALJ") at which the parties presented documentary evidence, testimony, and arguments.

The ALJ issued a decision dated January 17, 2013, which provided in part:

**FINDINGS OF FACT:** The claimant filed an initial claim for unemployment benefits approximately October 6, 2009 which had a benefit year ending date of October 1, 2010. The claimant subsequently filed an extended unemployment claim with the same benefit year ending date on May 11, 2010. A second regular claim was filed on October 3, 2010, with a benefit year ending date of October 1, 2011. The claimant's weekly benefit amount of unemployment benefits was $390.00 for the first regular claim and federal extended claim and $372.00 for the second regular claim. Vouchers requesting unemployment benefits were submitted electronically for the period from weeks ending December 10, 2009 through February 27, 2010. After a brief break, vouchers were then submitted again for the period from week ending May 15, 2010 through week ending October 2, 2010. Following the filing of the second claim, vouchers were then submitted from week ending October 9, 2010 through week ending December 18, 2010. The Administrative Law Judge finds that a debit card was issued to the claimant at his then correct address of record which had been submitted to the Department when he filed his claim. Unemployment benefits were deposited to the debit card for each of the weeks for which vouchers had been submitted. The debit card was used for purchases from various merchants and cash withdrawals were made from the debit card during such time period.

The Administrative Law Judge finds that the claimant opened his initial claim in the Vincennes Local WorkOne Office. The claimant was accompanied by his spouse at that time. The claimant created a user ID and unique password to enable vouchers to be submitted electronically thereafter. The claimant shared such information with his spouse who subsequently submitted vouchers on the claimant's behalf with the claimant's knowledge and consent. The claimant permitted his spouse to have possession and use of the debit card although the claimant regained possession of the card periodically. The Administrative Law Judge finds that the claimant personally had possession of the debit card in August of 2010. The claimant alleged that the debit card was removed from his wallet in August 2010 without his knowledge. The Administrative Law Judge finds that debit card usage records for August of 2010 reflected similar usage for purchases and withdrawals at the same merchants and ATM locations as prior debit card usage.

The Administrative Law Judge further finds that the claimant's spouse was incarcerated from approximately October 7 through October 26, 2010. The debit card was used for a cash withdrawal during such period of time on October 19, 2010 while the claimant's spouse was incarcerated and unable to make a withdrawal.

The claimant returned to work on November 2, 2009 with Hetsco, Inc. The claimant had wages from such employer in excess of his weekly benefit amount during both of his regular claim periods and his federal extension claim period. No wages were ever reported on any of the vouchers submitted by or on behalf of the claimant and no information was provided on the vouchers indicating that the claimant had worked.

In order to apply for benefits the claimant had to read a computer screen which contained a statement "I understand that I must report all earnings from employment or self-employment regardless of source". The claimant had to click a button indicating "Yes, I agree, file my claim". In order to click such button, the claimant had to also read a screen advising him of the claimant handbook which stated "By clicking the button 'Yes I agree, file my claim', you are agreeing to the responsibilities in the claimant handbook and indicating that you understand the penalties for falsification above." Each voucher submitted for which the claimant received unemployment benefits contained a question inquiring "Did you work?" and "If you worked, how much did you earn for the week?". Each of the vouchers submitted for which the claimant received unemployment benefits all are marked with a negative response to such questions. In order to submit each voucher, the claimant had to read a voucher certification screen which stated "I certify that I have entered any and all work, earnings and self-employment activity for this week --- I certify that all answers given in the application for benefits are true and accurate. I am aware that if I knowingly fail to disclose information or give false statements to receive unemployment benefits I may lose my unemployment benefits, be required to repay benefits received improperly with interest and penalty, and may be subject to civil and criminal prosecution". The claimant had to read such screen before clicking the button "Yes, I agree, file my claim" to submit the voucher.

When questioned by the Department Investigator, the claimant alleged that his spouse had continued to file vouchers without his knowledge and had continued to use the debit card without his knowledge after he had returned to work. The Administrative Law Judge finds that the claimant's allegations lack credibility in light of the fact that the claimant had personal possession of the debit card several months after he had returned to work and debit card usage remained consistent during the entire time frame even when the claimant's spouse was physically incarcerated. Further, the Administrative Law Judge finds that if the information concerning the claimant's employment and earnings during such time frame had been properly reported then his benefits would have been reduced or the claimant would not have been eligible to receive unemployment benefits for substantially all of the weeks for which vouchers were submitted and

4

benefits paid to the claimant.

**CONCLUSIONS OF LAW:**

\* \* \* \* \* \*

The Administrative Law Judge concludes that the claimant knowingly provided his confidential user ID and password to his spouse and that his spouse submitted vouchers requesting unemployment benefits during the period of time in question with the claimant's knowledge and consent. The claimant was placed on notice at the time of filing his claim that he was responsible for ensuring that all information submitted was honest and accurate and that he was responsible for all information submitted using his confidential user ID and password. Further, the Administrative Law Judge concludes that the claimant received benefits to which he would not have otherwise [] been entitled if his employment status and wage information had been properly reported to the Department. Further, the Administrative Law Judge concludes that the claimant benefited from the mutual use of the unemployment insurance debit card by his wife and had exclusive control over such card during a period of time when his wife could not have used the card during which the debit card was still used. The claimant was negligent in the supervision and control of his confidential user ID, password and debit card. Further, the Administrative Law Judge concludes that this information submitted on the claimant's claim was knowingly done by an individual with the consent of and knowledge of the claimant. As such, the Administrative Law Judge concludes that the terms of Ind. Code 22-4-13-1.1 apply to the claimant in this case.

**DECISION:** The decision of the Investigator dated November 15, 2012, is affirmed. The claimant received benefits to which he was not entitled and is now liable to repay to the Department. A penalty amount of 25% is assessed for the first instance occurring during the regular claim with benefit year ending October 1, 2010, a 50% penalty is assessed with regard to the second instance occurring in the federal extended unemployment claim with the same benefit year ending date and 100% penalty is assessed with regard to the third instance occurring during the second regular claim with a benefit year ending date of October 2, 2011. All the claimant's wages earned during the weeks of overpayment are cancelled for future use in establishing unemployment benefits. Interest will accrue on the overpayment balance until satisfied.

Exhibits at 248-250. Telligman appealed the ALJ's decision and requested to submit

additional evidence, and on March 4, 2013, the Board, after noting that no hearing was

5

held by the Board and that no additional evidence was accepted, affirmed the ALJ's decision. Telligman now appeals the Board's decision.

DISCUSSION

The first issue is whether the Board erred in concluding that Telligman knowingly failed to disclose or falsified any fact that would disqualify him from receiving benefits, reduce his benefits, or render him ineligible for benefits or extended benefits. Telligman contends that "[t]here is much in the record to dispute the inference that [he] had knowledge of the claims at issue," that his former spouse was the person "who subsequently filed vouchers for [him] using the computer at her parent's [sic] home," that he did not accompany her, that she "had access to and primary possession of [his] debit card," and that he "had no reason to continue to monitor the ID, password, and debit card after returning to work because he believed his unemployment benefits stopped when he started working." Appellant's Brief at 6. Telligman further asserts that the Board applied Ind. Code § 22-4-13-1.1 in error, that "[t]he statute does not include a definition for what constitutes an 'instance,'" and that "[n]o explanation was provided for why claims with the same benefit year would be assessed separately." Id. at 6-7. As to the second issue, he argues that the Board abused its discretion in denying his request to submit additional documents which would rebut the inference that he must have been using the unemployment benefits debit card during a period his former spouse stated she was incarcerated and which would show that he did not submit certain vouchers.

The Board maintains that the statute was correctly applied and that Telligman had fraudulently applied for and received unemployment benefits. The Board argues that,

with respect to each of three claims, vouchers were submitted and Telligman received benefits while he was employed. The Board further argues that Telligman shared his user ID and password with his wife, that she submitted vouchers on his behalf and with his consent, and Telligman knowingly allowed his wife control and access to his unemployment account. The Board maintains there was substantial evidence to arrive at the conclusion that Telligman had actual knowledge that he was committing fraud by submitting electronic vouchers while he was employed. The Board also argues that IDWD "has consistently interpreted 'instance' to mean each time a new claim for benefits is opened rather than each time a fraudulent voucher is submitted on a particular claim" and that "Telligman filed three separate claims, which translates to three separate instances." Appellee's Brief at 13. The Board also argues that the ALJ found that Telligman knew his former wife was filing the vouchers, that he agreed pursuant to a "User Agreement" to accept responsibility "for all activities that occur at the site under [his] password," and thus that, "when [he] knowingly shared his user ID and password with [his former spouse], he became responsible for all information submitted on vouchers." Id. at 14. Finally, the Board argues that Telligman was not entitled to introduce additional evidence and that he failed to show that the evidence could not have been submitted at the initial hearing.

The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. Recker v. Review Bd. of Ind. Dep't of

7

Workforce Dev., 958 N.E.2d 1136, 1139 (Ind. 2011) (citing McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998), reh'g denied). Ultimate facts are facts that involve an inference or deduction based on the findings of basic fact. Id. (citing McClain, 693 N.E.2d at 1317). Where such facts are within the special competence of the Board, the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable. Id. (citing McClain, 693 N.E.2d at 1318).

Ind. Code § 22-4-1-1 provides that the unemployment compensation system was established "to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, . . . and to provide maximum job training and employment opportunities for the unemployed, underemployed, the economically disadvantaged, dislocated workers, and others with substantial barriers to employment . . . ." At the time Telligman received the benefits at issue, Ind. Code § 22-4-13-1.1 provided in part:

> (a)    Notwithstanding any other provisions of this article, if an individual knowingly:
>
>> (1)    fails to disclose amounts earned during any week in the individual's waiting period, benefit period, or extended benefit period; or
>>
>> (2)    fails to disclose or has falsified any fact;
>
> that would disqualify the individual for benefits, reduce the individual's benefits, or render the individual ineligible for benefits or extended benefits, the individual forfeits any wage credits earned or any benefits or extended benefits that might otherwise be payable to the individual for the period in which the failure to disclose or falsification occurs.

(b)  In addition to amounts forfeited under subsection (a), an individual is subject to the following civil penalties for each instance in which the individual knowingly fails to disclose or falsifies any fact that if accurately reported to the department would disqualify the individual for benefits, reduce the individual's benefits, or render the individual ineligible for benefits or extended benefits:

(1)  For the first instance, an amount equal to twenty-five percent (25%) of the benefit overpayment.

(2)  For the second instance, an amount equal to fifty percent (50%) of the benefit overpayment.

(3)  For the third and each subsequent instance, an amount equal to one hundred percent (100%) of the benefit overpayment.

(Subsequently amended by Pub. L. No. 154-2013, § 5 (eff. Jul. 1, 2013)).

To the extent Telligman challenges findings of basic fact, our review of the record reveals substantial evidence of the findings of basic fact of the ALJ and the Board. See Recker, 958 N.E.2d at 1139. The ALJ and Board found, and the documents introduced by the IDWD show, that Telligman filed his first claim for regular benefits on October 6, 2009, his second claim for extended benefits on May 11, 2010, and his third claim for regular benefits on October 3, 2010. Further, as found by the ALJ and Board, vouchers were submitted electronically with respect to a number of weekly benefit periods during the time periods associated with each of the three claims, unemployment benefits were deposited to a debit card sent to Telligman, and the card was used for purchases and cash withdrawals. Telligman opened his initial claim at a WorkOne Office, he created a user

ID and unique password, and he shared the user ID and password with his wife at the time.[1]

In addition, the ALJ and Board found and the evidence at the hearing shows that Telligman was placed on notice at the time he filed his claim that he was responsible for ensuring that all information submitted was accurate, and that he received benefits to which he would not have otherwise been entitled if his employment status and wage information had been properly reported. The User Agreement which Telligman accepted when he created his online account to file his claims provided in part that Telligman was "responsible for maintaining the confidentiality of [his] account and password" and that "[b]y establishing an account, [Telligman] agrees to accept responsibility for all activities that occur at the site under [Telligman's] password." Exhibits at 83. IDWD presented evidence that, in order to submit a claim online, a warning regarding penalties for falsification appears in the middle of the webpage which states: "I understand that I must report all earnings from employment or self-employment regardless of source." Id. at 78.

Further, IDWD presented evidence that, for each of the vouchers submitted by or on behalf of Telligman, a number of questions required responses including whether the claimant worked during the weekly benefit period and, if so, how much the claimant earned. Each of the vouchers showed that he did not work and did not have earnings during the applicable benefit weeks. The evidence demonstrates that he earned wages in excess of his weekly benefit amount during weeks for which a voucher was submitted by or on his behalf during both of his regular claim periods and his extension claim period.

---

[1] A decree of dissolution of marriage was entered on May 9, 2012.

To the extent Telligman argues that his former wife submitted the weekly vouchers on his behalf and that he had no reason to monitor his user ID, password, and debit card after returning to work because he believed his unemployment benefits had ended, and that he did not knowingly fail to disclose income, we note that "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so," see Ind. Code § 35-41-2-2(b), and this definition of knowingly is incorporated into Ind. Code §§ 22-4-11.5 by Ind. Code §§ 22-4-11.5-6. In Tiller v. Review Bd. of Ind. Dep't of Workforce Dev., the ALJ and Board had found that the claimant's wife "did the computer work for claimant, filing for unemployment benefits and filing weekly vouchers." 974 N.E.2d 478, 480 (Ind. Ct. App. 2012). The ALJ and Board found that the claimant failed to disclose or falsified a material fact and therefore was liable to repay to IDWD the total overpayment plus penalties pursuant to Ind. Code § 22-4-13-1.1. Id. The claimant argued that the Board did not resolve several issues including whether he was "computer illiterate," whether "there was a reasonable explanation for [the claimant's] wife's sporadic disclosure of part[-]time wages," and whether he knew that incorrect information was reported to IDWD. Id. at 481. This court noted that the undisputed evidence demonstrated that the claimant earned wages during his benefit and extended benefit periods and that his wife, acting on his behalf, knew of those wages but did not disclose them to IDWD. Id. at 482. We also stated that "it would be futile to require such disclosures if claimants could circumvent them by stating they were computer illiterate while their agents were ignorant of their actual income." Id. Telligman provided his user ID and password to his spouse, who submitted

11

vouchers on his behalf for numerous benefit weeks during which he had employment and earnings. As previously noted, the User Agreement which Telligman accepted provided that he was "responsible for maintaining the confidentiality of [his] account and password" and that "[b]y establishing an account, [Telligman] agrees to accept responsibility for all activities that occur at the site under [Telligman's] password." Exhibits at 83. The ALJ found that he permitted his spouse to have possession and use of the debit card, although he regained possession of the card periodically, that Telligman personally had possession of the debit card in August 2010, that he alleged it was removed from his wallet that month without his knowledge, and that the usage records for the card for that month reflected similar usage for purchases and withdrawals at the same merchants and locations as prior usage. The ultimate findings of the ALJ and the Board, including that the submission of the vouchers by Telligman's former spouse on his behalf was performed with his knowledge and consent, are not unreasonable. See Recker, 958 N.E.2d at 1139.

Based upon the evidence recited above and in the record regarding Telligman's three unemployment benefit claims, the vouchers submitted by his former wife with respect to each of the claims, and his employment and earnings, we conclude that the Board did not err in finding that Telligman knowingly failed to disclose or falsified facts related to his employment and earnings that would disqualify him from receiving benefits, reduce his benefits, or render him ineligible for benefits or extended benefits.

With respect to Telligman's argument that the Board erred in failing to accept the evidence he wished to present after the hearing, we note that the decision to accept

12

additional evidence is a decision left to the discretion of the Board. Tiller, 974 N.E.2d at 481. "The rule requires a party offering additional evidence to show good cause why such evidence should be accepted and good reason why it was not introduced before the ALJ."[2] Id. (Smitty's Painting, Inc. v. Review Bd. of Workforce Dev., 908 N.E.2d 244, 247 (Ind. Ct. App. 2009)). Telligman's argument is premised on his belief that the additional evidence, if considered by the ALJ and Board, would have negated the conclusion that he knowingly failed to disclose amounts earned during his benefit and extended benefit periods. In Tiller, the claimant similarly argued that, had the Board accepted additional evidence, the evidence would have negated the ALJ's conclusion that he knowingly failed to disclose amounts earned during his benefit periods. Id. at 482. We noted that we had "no reason to assume the Board would have credited the additional evidence in the same way [the claimant] does" and that the undisputed evidence demonstrated that the claimant earned wages during his benefit and extended benefit periods, that his wife, acting on his behalf, knew of those wages but did not disclose them to IDWD, and that the Board did not abuse its discretion when it did not consider the claimant's additional evidence. Id.

In this case, like in Tiller, we cannot say that the Board, if it had accepted and considered the additional evidence Telligman wished to present, would have credited the

---

[2] 646 IAC 5-10-11(b) (2011) provides:

Each hearing before the review board shall be confined to the evidence submitted before the administrative law judge unless it is an original hearing. Provided, however, the review board may hear or procure additional evidence upon its own motion, or upon written application of either party, and for good cause shown, together with a showing of good reason why the additional evidence was not procured and introduced at the hearing before the administrative law judge.

13

additional evidence in the same way Telligman does. See id. Telligman claims that his additional evidence of his debit card activity "would serve to rebut the inference that [he] must have been using the debit card during those dates" and "would also support [his] claim that he did not file the May 11, 2010 or October 3, 2010 claims or submit vouchers, as [his former spouse] was not incarcerated and free to take those actions." Appellant's Brief at 9. The evidence before the ALJ and Board included certain debit card usage records, and the ALJ expressly determined that the debit card which accessed the unemployment benefits released to Telligman "was used for purchases from various merchants[,] and cash withdrawals were made from the debit card during such time period" and that, while Telligman alleged that the card was removed from his wallet in August 2010 without his knowledge, "the usage records in August 2010 reflected similar usage for purchases and withdrawals at the same merchants and ATM locations as prior debit card usage." Exhibits at 248-249. The ALJ and Board considered evidence of the nature and frequency of the usage of the debit card and the extent to which the usage records tended to show either that Telligman or his former wife were in possession of the debit card or that Telligman was aware that he or his former wife were using unemployment benefits while he was employed and earning wages.

Further, the additional evidence Telligman wished to present to the Board was available prior to the hearing before the ALJ, and he was aware of the dates his former spouse indicated she was incarcerated in her sworn statement made available to him prior to the hearing. Specifically, in her statement which was admitted as IDWD's Exhibit E at the hearing, when asked if she received certain benefits using the debit card belonging to

14

Telligman "for weeks ending 10/9/10 to 12/18/10," Telligman's former spouse stated: "No I did not use Shawn Debit card in that time Oct 7 to Oct 26 I was in jail." Exhibits at 165. On another page of her statement, when asked if she had been incarcerated anywhere during any of the other dates of the claims, Telligman's former spouse stated "yes oct 2010." Id. at 167. At the hearing, Telligman indicated that he had an opportunity to review the pages of IDWD's Exhibit E, and if he wished he could have presented, at the hearing, the additional evidence he later asked the Board to accept. Further, even if there was no usage of the debit card, Telligman's former wife, on his behalf, used his user ID and password (which he had shared with her) to submit weekly vouchers indicating that Telligman did not have employment when that was not in fact the case. Pursuant to the User Agreement, Telligman remained responsible for the information provided when the vouchers were submitted on his behalf. We conclude that the Board did not err or abuse its discretion when it did not accept his additional evidence. See Tiller, 974 N.E.2d at 482 (concluding the Board did not abuse its discretion when it did not consider the claimant's additional evidence).

Finally, with respect to Telligman's assertion that the ALJ and Board incorrectly interpreted the term "instance" in Ind. Code § 22-4-13-1.1 and thus that the penalties assessed against him were improper, we find that the penalties assessed by the ALJ and Board were not improper or erroneously imposed. Subsection (b) of Ind. Code § 22-4-13-1.1 provides for penalty assessments of twenty-five percent, fifty percent, and one hundred percent of the benefit overpayment amounts for the first instance, second instance, and third and each subsequent instance, respectively, when an individual

15

knowingly fails to disclose or falsifies any fact that would disqualify him for benefits. In Tiller, the claimant filed an initial claim for unemployment benefits in February 2010, another claim for extended benefits in August 2010, and a third claim for regular benefits in February 2011. 974 N.E.2d at 479-480. The ALJ and Board assessed penalties for the overpayments and this court affirmed the Board's decision. Id. at 482. In Tiller, the claimant's three claims (two claims for regular benefits and one for extended benefits) were not considered one "instance" under Ind. Code § 22-4-13-1.1(b). This interpretation of the statute is reasonable. Telligman filed his first claim for regular benefits on October 6, 2009, a second claim for extended benefits on May 11, 2010, and a third claim for regular benefits on October 3, 2010. Vouchers indicating that he was not employed and did not earn wages were submitted during each of the applicable claims periods, and Telligman was employed and earned wages during each of the three claims periods. We find that the assessment of penalties set forth in the decision of the ALJ and adopted by the Board was proper.

CONCLUSION

Based upon the record, we conclude that the ALJ and Board did not err in finding that Telligman knowingly failed to disclose or falsified facts that would disqualify him from receiving benefits, reduce his benefits, or render him ineligible for benefits or extended benefits, in finding him liable to repay IDWD the benefit overpayment amounts together with applicable penalties and interest, and that the Board did not abuse its discretion in denying his request to submit additional evidence.

For the foregoing reasons, we affirm the decision of the Board.

16

Affirmed.

NAJAM, J., and MATHIAS, J., concur.