**Andrew W. MILLER, Appellant–Claimant,**

v.

**INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, Unemployment Insurance Review Board and United Parcel Service, Inc., Appellees.**

No. 93A02–0704–EX–316.

Court of Appeals of Indiana.

Dec. 21, 2007.

---

William R. Groth, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Anita Wylie, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Andrew Miller appeals from the decision of the Indiana Department of Workforce Development Review Board (the "Board") affirming the decision of the Administrative Law Judge ("ALJ"), who found Miller ineligible for unemployment compensation benefits. Miller raises two issues, which we restate as whether Miller was denied due process based on inadequate notice of the issues to be decided at his hearing before the ALJ and whether the Board's decision was unsupported by its findings. Concluding that Miller was denied due process and that the Board's findings do not support its decision, we reverse.

*Facts and Procedural History*

On December 1, 2006, Miller, who had been working for United Parcel Service, Inc., ("UPS") since 1994, was involved in an accident while driving his UPS truck. Miller stopped at a stop sign and proceeded into an intersection, not seeing a car approaching from his right side. The vehicles collided, and both occupants of the other car were injured and required medical attention. The estimated damage caused by the accident was between $5,000 and $10,000.

Following the accident, Miller was taken out of service and eventually terminated on December 29, 2006. UPS based the termination on its claim that Miller violated Article 17(d) of the Labor Agreement between UPS and Teamsters Local 135 (the "Agreement"). Article 17(d) indicates that an employee may be suspended or discharged without prior warning for:

gross negligence, resulting in a serious accident. A serious accident is defined as one in which there is a fatality, a bodily injury to a person who, as a result of the injury, receives immediate medical treatment away from the scene of the accident, or $4,400.00 or more in damages.

Appellant's Appendix at 16–17.

Following his suspension, Miller filed a claim for unemployment benefits with the Indiana Department of Workforce Development (the "Department"). On December 21, 2006, a Claims Director from the Department approved Miller's claim, finding that UPS had failed to carry its burden of establishing willful misconduct on Miller's part. On January 2, 2007, UPS appealed this determination and requested a hearing before an ALJ. On January 11, 2007, a Notice of Hearing (the "Notice") was sent to Miller. The Notice indicated that the issue at the hearing would be: "Whether the Claimant was able, available, and making an effort to secure full-time work. Ind.Code 22–2–14–3." Appellant's App. at 27. On January 25, 2007, the ALJ held a hearing at which the matter argued was whether UPS had just cause to terminate Miller. At the hearing, after UPS presented its case and the ALJ asked Miller questions regarding the accident, the following exchange took place between Miller (the Claimant) and the ALJ:

Claimant: ... I was under the impression that this hearing was under the fact that I wasn't able to find a job. That I was supposed to be looking for a job, not the accident.

Judge: Well, that's what this is about, the suspension for misconduct. It has nothing to do with the work search.

Claimant: Oh. I, I received a letter ... I'm sorry, sir.

Judge: That's not ... uh, people are getting confused. That's what the issue is listed but if you read the little box it says, "Suspended for misconduct in connection with the work." [1]

Claimant: I've had it.

Judge: Right there on the second page you're holding in your left hand.

Claimant: Yeah, but I ...

Judge: That's what we're talking about at this point.

Claimant: Okay, so that's what you guys had filled out. Okay, I'm sorry because I was under the, um ... that this was cleared up by the, uh, claims adjuster (inaudible).

Judge: No.

Claimant: It said that it was, uh ... determination that it was not misconduct. That's what I thought right there.

Judge: They appealed and now it's at my decision.

Claimant: Okay. I'm sorry. I didn't fully ... didn't understand it.

Judge: Anything else?

Claimant: No, sir.

Transcript at 7–8. The ALJ then reversed the claims adjuster's determination pursuant to the following findings and conclusions:

FINDINGS OF FACT: ... The claimant was discharged for negligence resulting in a serious accident. A serious accident is defined as one where there is a fatality, bodily injury to a person who, as a result of injury, receives immediate medical treatment away from the scene of the accident, or results in more than $4,400.00 in damages. Violation of the rule results in discharge on the first occurrence. The employer's rule exists. This rule exists as part of a collective bargaining agreement between the

---

1. We have been unable to find this notation on any document in the record.

Teamster's Local 135 and the employer. As a negotiated rule it is reasonable. No employee has been allowed to remain employed with this employer after violating the rule. The rule is uniformly enforced. The claimant was a member of the union. The claimant had knowledge of the employer's rule. On December 1, 2006 at approximately 4:00 pm the claimant came to an intersection. The claimant's road had a stop sign. The claimant states that he stopped and looked both ways. The claimant proceeded into the intersection and struck another vehicle. The intersecting road did not have a stop sign. The claimant did not know where the car came from and felt that it must have been in a blind spot. The car flipped more than once. The driver of the car was seriously injured and had to be taken to the hospital from the accident scene for treatment. The damage for the accident was estimated to be between $5,000.00 and $10,000.00.

CONCLUSIONS OF LAW:

* * *

The employer has established that its rule exists, serves a reasonable purpose and is uniformly enforced. The claimant had knowledge of the employer's rule. The claimant has knowingly violated the rule. While the claimant's actions may not have been intentional they meet the definition of a serious accident as defined by the collective bargaining agreement. If the claimant had a blind spot he should have taken more care in looking both ways before he proceeded into the intersection. . . .

Appellant's App. at 4–5.

Miller then appealed the ALJ's decision to the Board, which affirmed, adopting the ALJ's findings and conclusions. Miller now appeals.[2]

### Discussion and Decision

### I. Due Process

▆▆▆ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *NOW Courier, Inc. v. Review Bd. of Ind. Dept. of Workforce Dev.*, 871 N.E.2d 384, 387 (Ind.Ct.App. 2007). Whether a party was denied due process is a question of law that we review de novo. *Id.*

▆▆▆ Parties to a disputed claim for unemployment benefits are required to be afforded "a reasonable opportunity for a fair hearing." Ind.Code § 22–4–17–3. A "fair hearing" inherently includes reasonable notice of the hearing. *See Scott v. Review Bd. of Ind. Dep't of Workforce Dev.*, 725 N.E.2d 993, 996 (Ind.Ct.App. 2000). Miller argues that he was denied due process because the Notice indicated that the issues to be addressed at the hearing were different than the issue actually addressed. The Appellees argue: 1) Miller was not entitled to notice of the issues to be addressed at the hearing; 2) the Notice did inform Miller that whether he was dismissed for just cause would be addressed at the hearing; 3) Miller waived the issue by not objecting or requesting a continuance; and 4) any error was harmless as Miller has failed to point to prejudice. We will address each argument in turn.

### A. Notice of the Issue

▆▆▆ In arguing that Miller was not entitled to notice of the particular issues to be addressed at the hearing, the Appellees

---

**2.** The Department, the Board, and UPS are all parties to appeal. We will refer to them collectively as the "Appellees."

cite the administrative regulation indicating that after a hearing before an ALJ is scheduled, "notices of the hearing shall be mailed to the claimant...." 646 Ind. Admin. Code § 3–12–1(d), *available at* www.in.gov/legislative/iac. The Appellees argue that because this regulation does not specify what must be included in the notice, the notice need not include the issue. However, the Appellees disregard the statutory requirement that when a party appeals an initial determination of eligibility for benefits, "each party to a hearing before an administrative law judge ... shall be mailed a notice of the hearing at least ten (10) days before the date of the hearing specifying the place and time of the hearing *and identifying the issues to be decided.*" Ind.Code § 22–4–17–6 (emphasis added). Besides this clear statutory directive, notice of the issues to be addressed at a hearing is a fundamental requirement of a fair hearing. *See FTC v. Nat'l Lead Co.*, 352 U.S. 419, 427, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957) ("It goes without saying that the requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them."); *Securities Com'n of Ind. v. Holovachka*, 234 Ind. 135, 137, 124 N.E.2d 380, 381 (1955) ("The right to a hearing includes the right to know and meet the charges."). We conclude that Miller was entitled to be notified of the issues to be addressed at the hearing.

### 2. Whether the Notice Identified the Issues

 The Notice indicated that the hearing would address "[w]hether the Claimant was able, available, and making an effort to secure full-time work. Ind.Code 22–2–14–3." Appellant's App. at 27. The Appellees argue that this statement should have alerted Miller that the hearing would address whether UPS had just cause to terminate him because the statute cited "discusses an individual's availability for work and unavailability by law if found to be suspended for misconduct in connection with the work." Appellees' Brief at 5. Indiana Code section 22–4–14–3(b) indicates that an unemployed individual is eligible for benefits if that individual is able to work, is available for work, is making an effort to secure work, and participates in reemployment services. The statute further states: "unavailability for work of an individual exists in, but is not limited to, any case in which ... such individual is suspended for misconduct in connection with the individual's work." Ind.Code § 22–4–14–3(c)(3). The Appellees' apparent argument is that because an individual is "unavailable" if that individual is suspended for misconduct, the Notice sufficiently informed Miller that whether he was suspended for just cause would be addressed at the hearing. We disagree.

First, Indiana Code section 22–4–14–3 contains no reference to the issue of "just cause." In that regard, the citation does not place "just cause" at issue. Second, and more importantly, this issue is specifically addressed in another statute, which identifies the specific scenario constituting "just cause" argued by the Appellees and found by the ALJ. *See* Ind.Code § 22–4–15–1(d) (indicating that "discharge for just cause" includes a "knowing violation of a reasonable and uniformly enforced rule"). Although the statute cited in the Notice may tangentially encompass issues relating to the propriety of UPS's suspension and eventual termination of Miller, such "nuance and subtlety are not virtues in agency notice practice." *Natural Res. Defense Council v. U.S. E.P.A.*, 279 F.3d 1180, 1188 (9th Cir.2002). If the hearing was intended to challenge the claims adjuster's finding of no just cause, the Notice should have stated so explicitly, or at least cited the statute directly addressing the issue of

just cause. *See id.; cf. Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987) (holding that an employee received inadequate notice of the issues to be addressed at a hearing where the notice contained a "broad unspecified statement that ... [t]echnically, of course, ... covered all issues relating to his termination and eligibility for benefits").

We conclude that the Notice did not adequately inform Miller of the issue that was addressed at the hearing.

### 3. Waiver

In administrative hearings, "where there is an appearance, without objection, or indeed, where there is any act indicating consent, want of notice will be deemed waived." *Brinson v. Sheriff's Merit Bd. of Jefferson County,* 182 Ind. App. 246, 254, 395 N.E.2d 267, 273 (1979). Even with regard to constitutional issues, such as lack of due process, we may find waiver if a party raises an issue for the first time on appeal. *Hite v. Vanderburgh County Office of Family and Children,* 845 N.E.2d 175, 180 (Ind.Ct.App.2006). The Appellees argue that Miller waived this argument by failing to lodge a formal objection or request a continuance at the hearing. We disagree.

Miller's statements at the hearing sufficiently notified the ALJ of his lack of notice. Hearings before an ALJ "shall be conducted informally in order to determine the substantial rights of the parties." 646 Ind. Admin. Code § 3–12–3(b). Although general rules of procedure apply at such hearings, they do not apply "to an extent as to ... jeopardize the rights of any interested party." *Id.* Although Miller may not have formally objected to the proceeding, he clearly indicated that he was not aware that whether he was discharged for just cause would be addressed at the hearing. Moreover, we point out that when a party is unrepresented by

counsel before an ALJ, the ALJ has a duty to "examine the party's witnesses ... in order to ensure complete presentation of the case." *Id.* We conclude that in the context of a hearing before an ALJ, Miller's statements regarding lack of adequate notice were sufficient to preserve the issue.

The Appellees also argue that Miller waived the issue by failing to raise it in his appeal to the Board. Again, we disagree. The issue of whether Miller received adequate notice involves a legal, not a factual conclusion. We have previously declined to find waiver of an issue not raised in an administrative proceeding where resolution of the issue did not require any factual determinations, and required only legal conclusions. *See Tokheim Corp. v. Review Bd. of Ind. Employment Sec. Div.,* 440 N.E.2d 1141, 1142 (Ind.Ct.App.1982); *cf. Frey v. Review Bd. of Ind. Employment Sec. Div.,* 446 N.E.2d 1341, 1346 (Ind.Ct. App.1983) (noting that where the issue is one of law, "cases concerning waiver of factual issues not presented in the administrative proceedings are inapposite."). Also, our supreme court has held that a party is not required to exhaust administrative remedies when the question presented is strictly constitutional. *See Wilson v. Bd. of Ind. Employment Sec. Div.,* 270 Ind. 302, 305, 385 N.E.2d 438, 441 (Ind.1979), *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979). Our supreme court explained: "[T]he question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative channels and is thus a subject more appropriate for judicial consideration." *Id.* Therefore, this court is the more appropriate forum in which to raise a claim of violation of due process.

On the facts of this case—Miller alerted the ALJ to his lack of notice, the strictly legal nature of the issue, and the fact that this appeal is the first point at which Miller has had counsel—and in consideration of our strong disfavor of invoking waiver when we can readily and completely address the issues on the merits, *see Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 144 n. 4 (Ind.Ct.App.2004); *U.S. Fidelity & Guar. Co. v. DeFluiter,* 456 N.E.2d 429, 431 (Ind.Ct.App.1983), we decline to hold that Miller has waived this issue. *Cf. Jaskowiak v. CM Const. Co., Inc.,* 717 N.W.2d 448, 450 (Minn.Ct.App. 2006) (declining to hold that party waived lack of notice by failing to raise issue in its appellate brief based on Minnesota appellate rule allowing court of appeals "to address any issue as the interests of justice may require"), *rev. granted; Bunker v. Labor and Indus. Rev. Comm'n,* 257 Wis.2d 255, 650 N.W.2d 864, 869–70 (Wis. Ct.App.2002) (declining to apply waiver to party's claim that hearing before an ALJ violated his due process rights). *But see Berger v. Unemployment Compensation Bd. of Review,* 141 Pa.Cmwlth. 139, 595 A.2d 641, 643 (1991) (refusing to address due process argument where party did not raise issue at administrative review level).

### 4. Prejudice

Finally, the Appellees argue that even if the Notice was inadequate, Miller is unable to demonstrate any prejudice, and therefore is not entitled to reversal. We need not reach a conclusion on this issue because we reverse the Board's decision on the merits. However, we express our doubt as to whether being not only uninformed, but also affirmatively misled as to the issues to be raised at a hearing could ever be harmless. We recognize that Miller would have been better served to identify specific evidence that he would have introduced or procedures he would have employed had he been aware of the nature of the hearing. However, it is clear from the transcript of the hearing that Miller was not fully prepared to discuss whether he was discharged for just cause. Miller presented no evidence on the matter, and his only participation at the hearing came when he responded to the ALJ's questions. This case is therefore unlike others in which we have found waiver where a party failed to raise the issue of lack of notice and participated actively in the hearing. *See City of New Haven v. Ind. Suburban Sewers, Inc.,* 257 Ind. 609, 611, 277 N.E.2d 361, 362 (1972); *Lilley v. City of Carmel,* 527 N.E.2d 224, 227 (Ind. Ct.App.1988) (party offered evidence and objected to the admission of evidence); *Jewell Grain Co., Inc. v. State Bd. of Tax Comm'rs,* 524 N.E.2d 49, 50 (Ind.Tax1988), *aff'd,* 556 N.E.2d 920 (Ind.1990) (party received only eight days of notice, instead of the requisite ten, but appeared at the hearing and did not assert lack of notice).

### II. Sufficiency of the Evidence

#### A. Standard of Review

 Although the employer bears the burden of demonstrating it discharged the employee for just cause, on appeal, the employee bears the burden of demonstrating reversible error. *Wakshlag v. Review Bd. of Ind. Employment Sec. Div.,* 413 N.E.2d 1078, 1082 (Ind.Ct.App.1980). When reviewing a decision of the Board, we must determine whether its decision "is reasonable in light of its findings." *KLR, Inc. v. Ind. Unemployment Ins. Review Bd.,* 858 N.E.2d 115, 117 (Ind.Ct.App. 2006). We will not reweigh evidence or judge witness credibility. *Id.* Instead, we will consider only the evidence favorable to the Board's decision and will draw reasonable inferences from such evidence. *Id.* However, we review questions of law de novo, and will pay no deference to the

Board's findings or conclusions in that regard. *Id.*

## B. Sufficiency of Findings [3]

The rule UPS claims Miller violated requires that an employee commit "gross negligence, resulting in a serious accident." Appellant's App. at 17. Miller argues that because the Board's findings do not indicate that he committed "gross negligence," they are insufficient to support the judgment. The Appellees counter with two arguments: 1) the Agreement defines "gross negligence" as mere negligence resulting in a serious accident; and 2) the Board's findings indicate that Miller committed the requisite degree of negligence.

▬▬▬ We first reject the Appellees argument that the Agreement's provision,[4] "read as a whole, defines 'gross negligence' as negligence resulting in a serious accident." [5] On the contrary, the agreement indicates that a person may be fired for "gross negligence, resulting in a serious accident. A serious accident is defined as one. . . ." Appellant's App. at 17. To read this as defining "gross negligence" as mere negligence resulting in a serious accident would require us to rewrite the terms of the agreement to read "Gross negligence is defined as negligence resulting in a serious accident." We are not at liberty to do

so. By its plain terms, the Agreement defines "serious accident," but not "gross negligence."

We also note that traditionally, the extent of harm (as long as there was *some* legally cognizable harm) caused by a breach of a duty is largely irrelevant to whether or not a breach occurred. *See De Sole v. United States*, 947 F.2d 1169, 1180 (4th Cir.1991) (Widener, J., dissenting) ("A connection between the degree of damages and the degree of fault of the parties is supported by neither logic nor precedent."); *White v. Anchor Motor Freight, Inc.*, 683 F.Supp. 1177, 1180 (W.D.Mich. 1988) ("The distinction between minor and major [negligence] depends on the degree of negligence, not on the dollar amount of damage, otherwise drivers hauling more expensive cargoes would be arbitrarily penalized.").

The Agreement's lack of a definition of "gross negligence" is not problematic, as a survey of this and other states' common law indicates that "gross negligence" is a fairly uniform concept, generally defined as "[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party. . . ." Black's Law Dictionary 1062 (8th ed.2004); *see Palace Exploration Co. v. Petroleum Dev. Co.*, 374 F.3d 951, 954 (10th Cir.2004)

---

3. As we conclude that the evidence does not support a finding of gross negligence, we need not address Miller's argument that he did not "knowingly" violate a UPS rule.

4. As the Appellees point out, neither party has supplied this court with a copy of the entire Agreement. Therefore, we must assume that the Agreement does not define "gross negligence."

5. We recognize that generally, "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted and federal labor-law principles—necessarily uniform throughout the Nation—

must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). However, Miller's state-law unemployment claim is not based on the Agreement, and is therefore not pre-empted. *See id.* at 413 n. 12, 108 S.Ct. 1877. The Appellees do not argue that Miller's act of gross negligence is based on a duty created by the agreement; instead, Miller is "accused of acting in a way that might violate the duty of reasonable care owed to every person in society." *United Steelworkers of America, AFL–CIO–CLC v. Rawson*, 495 U.S. 362, 371, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

("Gross negligence is '[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty or property of another [which] may result in such a gross want of care for the rights of others and the public that a finding of a willful, wanton, deliberate act is justified.'" (quoting *Fox v. Okla. Mem'l Hosp.*, 774 P.2d 459, 461 (Okla.1989)); *Houston Exploration Co. v. Halliburton Energy Serv., Inc.*, 269 F.3d 528, 531 (5th Cir.2001) ("Under Louisiana law, gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence."); *Streber v. Hunter*, 221 F.3d 701, 732 (5th Cir.2000) (citing a Texas case in stating that "[r]ecovery for 'gross negligence' is based on the fact that the defendant is actually aware that his or her conduct created an extreme degree of risk that the plaintiff would be seriously injured"); *Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1377 (11th Cir.2000) ("To hold a party liable for gross negligence, the district court must find that the defendant had knowledge of the existence of circumstances which constitutes a 'clear and present danger' and yet still undertakes 'a conscious voluntary act or omission ... which is likely to result in injury.'" (quoting *Sullivan v. Streeter*, 485 So.2d 893, 895 (Fla.Ct.App.1986), *decision approved*, 509 So.2d 268 (Fla.1987)); *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir.1998) (under New York law, "gross negligence 'is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing'" (quoting *AT & T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir.1996)); *Menuskin v. Williams*, 145 F.3d 755, 767 (6th Cir.1998) ("[A] plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted 'with utter unconcern for the safety of others, or ... with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'" (quoting *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn.Ct.App.1972)); *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 464 (9th Cir.1977) ("Gross negligence in Oregon is characterized by conscious indifference to or reckless disregard of the rights of others."); *Northern Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind.2003) (to constitute "gross negligence," a party must engage in "a conscious, voluntary act or omission in reckless disregard of the consequences").

■ At no point did the Board's findings indicate that Miller committed gross negligence; instead, the findings indicate merely that Miller was negligent. The distinction is not merely semantic. Indeed, our supreme court has recognized that when comparing negligence to gross negligence, "the level of conduct amounting to a breach of that duty is quite different." *Sharp*, 790 N.E.2d at 466. As the Board failed to find that Miller's conduct constituted gross negligence where the Agreement required it to do so, and it made a specific finding of mere negligence, its findings were insufficient to support its judgment that Miller was discharged for violating the rule requiring gross negligence.

■ Further, the Board's factual findings are insufficient to support a finding of gross negligence. Although the question of whether an act or omission constitutes gross negligence is generally a question of fact, the question may become one of law if "the facts are undisputed and only a single inference can be drawn from those facts." *Id.* Here, the facts are not disputed. Miller approached an intersection, stopped at a stop sign, proceeded into the intersection, and struck a vehicle that he had not seen, claiming that it was in his blind spot.

We conclude that these facts, as a matter of law, indicate that Miller was negligent, but not grossly negligent.

Nowhere in its findings does the Board indicate that Miller engaged in any sort of conduct with reckless disregard. Indeed, the Board found that Miller's "actions may not have been intentional," but that "[i]f the claimant had a blind spot he should have taken more care in looking both ways." Appellant's App. at 5. "In Indiana, a motorist has a duty to use due care to avoid a collision and . . . to maintain a lookout while traveling on a highway." *Koroniotis v. LaPorte Transit, Inc.*, 397 N.E.2d 656, 658–59 (Ind.Ct.App.1979). The fact that Miller did look both ways clearly indicates that he did not recklessly disregard this duty to other drivers. Instead, Miller did not "disregard" his duty at all; he merely failed to adequately meet it. Therefore, Miller was negligent, but his regard for other motorists precludes a finding of gross negligence. *See Murphy v. Smith*, 243 F.Supp. 1006, 1009–10 (E.D.S.C.1965) (where driver entered an intersection and caused an accident after failing to see a stop sign, but no evidence existed of excessive speed, driver was guilty of negligence, but not gross negligence); *Vipond v. Jergensen*, 260 Iowa 646, 148 N.W.2d 598, 603–04 (Iowa 1967) (driver who failed to make a proper approach and stop at an intersection was guilty of negligence, but not gross negligence); *Toth v. Bacon*, 190 Neb. 344, 208 N.W.2d 271, 273 (1973) ("[Driver's] failure to see the [other] automobile until after she had turned in front of it was evidence of negligence but not gross negligence."); *Brugh v. Peterson*, 183 Neb. 190, 159 N.W.2d 321, 324 (1968) ("The failure to stop at the stop sign or see the . . . automobile, alone, was not sufficient to establish gross negligence."); *Reese v. Bridgmon*, 217 Or. 290, 340 P.2d 573, 576–77 (1959) (finding insufficient evidence of gross negligence where evidence showed "momentary inattention and . . . nothing . . . to indicate a conscious indifference to consequences"); *Foster v. Harvill*, 353 S.W.2d 84, 86 (Tex.Civ.App.1962) (where evidence indicated that driver stopped at a stop sign, looked both ways, and proceeded into the intersection, "as a matter of law, gross negligence was not raised"); *cf. Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1113 (Ind.Ct.App.2001) (finding no issue of material fact as to whether driver's conduct constituted willful and wanton misconduct where driver accelerated through yellow light and failed to look for other vehicles).

We conclude the Board's findings fail to support its judgment and the evidence fails to support a finding of gross negligence. We therefore reverse the Board's determination that the claims adjuster's decision was improper.

### Conclusion

We conclude that Miller received inadequate notice of the issues to be decided at his hearing and that the Board's findings and the evidence before the Board do not support its judgment.

Reversed.

KIRSCH, J., and BARNES, J., concur.