Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 06 2014, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MELLONDIE BENSEN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MELLONDIE BENSEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1311-EX-920 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 13-R-3354

**March 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Mellondie Benson ("Employee"), *pro se*, appeals a decision by the Review Board of the Indiana Department of Workforce Development (the "Board") denying her claim for certain unemployment benefits. Employee raises two issues which we consolidate and restate as whether the Board erred in concluding that she was not entitled to additional employment benefit payments. We affirm.

FACTS AND PROCEDURAL HISTORY

Employee filed a claim with the Indiana Department of Workforce Development ("DWD") for regular unemployment insurance ("UI") benefits on or about October 9, 2011, which claim had a benefit period end date of October 6, 2012. On or about October 28, 2012, a claim was initiated for Employee to receive federal extended emergency unemployment compensation ("EUC"), which claim had a benefit period end date of October 12, 2013.[1] On April 7, 2013, Employee filed another claim for unemployment benefits, which claim had a benefit period end date of April 5, 2014.[2]

On May 28, 2013, Employee filed a letter appeal from the deputy's determination with respect to the April 7, 2013 claim.[3] In her letter, Employee stated that she was appealing "to receive the funds that were not issued from [her] initial (regular) [October 9, 2011] claim, which left approximately $586.00"[4] and that "[w]hen [she] went into the WorkOne office to check get [sic] information about why [her] benefits were stopped

---

[1] Employee testified that, when her benefits from her October 2011 claim expired, she went to the office to file an appeal and that the representative "put [her] on the EUC." Transcript at 16.

[2] This claim was identified as a claim for UI in DWD's system.

[3] The parties do not point to a copy of the deputy's determination in the record.

[4] Employee testified at the hearing and argues on appeal that the remaining amount she is entitled to is $574.

2

when there was money left, [she] was told the claim had expired and to apply for EUC benefits [and] that the benefits that were not issued could not be issued." Appellant's Appendix at 6; Exhibits at 2. Employee also stated that "[d]uring mid May 2013 when [she] logged into file [her] weekly voucher for EUC, there was nothing there for [her] to fill out" and that the WorkOne "representative told [her] that [her] benefits stopped because the time limit for tier III EUC had been reached." Id. Employee stated that she "would like to be issued the benefits that were left from [her] initial (regular) claim." Id.

On August 21, 2013, the DWD sent a Notice of Hearing to Employee stating that a telephonic hearing was scheduled for September 3, 2013, and that, if she had documents she wished for the judge to consider, she must deliver them by mail, fax, or in person to the appeals office and the other party and that the documents must be received at least twenty-four hours before the scheduled hearing. On August 28, 2013, DWD, UI Appeals, received an acknowledgement sheet from Employee indicating that she would participate in the scheduled September 3, 2013 hearing.

On September 3, 2013, a telephonic hearing was held with an administrative law judge (the "ALJ"). At the start of the hearing, Employee indicated that she did not submit any documents to be considered by the ALJ. The ALJ heard testimony from Employee and Pearline Harris, a program specialist on behalf of DWD. Harris testified that the base period for Employee's April 7, 2013 claim was the "entire calendar year of 2012," that no wages were reported for Employee during the base period, and that as a result Employee was not eligible for unemployment benefits with respect to her April 7,

3

2013 claim.[5]  Transcript at 17.  Employee also testified that she did not work or have earnings during the calendar year 2012.  With respect to her October 2011 claim, Employee testified consistent with the statement she made in her letter appeal, and that the claimant handbook did not discuss expired benefits or what to do if there was a remaining balance.  Employee also testified that, when she made the April 7, 2013 claim, she was attempting to receive the remaining balance from her initial claim and "it wasn't anything to do with the [EUC] benefits that [she] was getting."  Id. at 22.

With respect to Employee's October 2011 claim, the ALJ then asked Harris whether Employee would have any eligibility for any remaining balance of benefits after the end of the benefit period, and Harris responded in the negative.  She explained that the benefit period ending date for the claim was October 6, 2012, that "any funds that were left in that claim would go into the unemployment pool," and that Employee "would not be eligible for those funds."  Id. at 23.  The ALJ clarified Harris's testimony that, once Employee reached the end of the benefit year, she was no longer eligible to draw any more funds, regardless of whether there was a remaining balance.  The ALJ later explained that a regular claim for unemployment benefits remains open for fifty-two weeks and that, during that period of time, a person is generally eligible to draw benefits for up to twenty-six weeks.

---

[5] Harris also testified that the base period "is the first four quarters out of the last five completed quarters prior to filing."  Transcript at 17.  Harris further testified that a claimant must have at least $4,200 of wages in the claimant's base period, that of that amount the claimant must have $2,500 in the last six months of the base period, and that the amount earned during the base period must be at least 1.5 times the highest earning quarter of the base period.

On September 5, 2013, the ALJ issued a decision which found that Employee was ineligible to receive additional unemployment benefit payments. The ALJ's decision provided in part:

> **FINDINGS OF FACT**: [Employee] filed a claim for unemployment benefits [on] approximately April 7, 2013. . . . A request for an appeal was received on May 28, 2013. [Employee] filed an appeal in attempt to receive benefits from a prior claim that had a benefit year ending date of October 6, 2012. [Employee] then began receiving benefits under a federal extended unemployment compensation claim. [Employee] then filed a new claim with a benefit year ending date of April 5, 2014.
>
> The [ALJ] finds that [Employee] had a base period of such claim which included the entire calendar year of 2012. Further, the [ALJ] finds that [Employee] had no wages from employment during the year of 2012. [Employee] was denied eligibility for benefits under the new claim because she lacked sufficient wage credits.
>
> **CONCLUSIONS OF LAW**: . . . .
>
> Indiana Code Section 22-4-14-5 requires an individual to meet certain earning requirements during the base period in order to establish an unemployment claim. Those earnings have to occur during the individual's base period. The base period is defined in Indiana Code Section 22-4-2-12 as the first four of the last five quarters immediately proceeding [sic] the first day of an individual's benefit period. The benefit period is defined in Indiana Code Section 22-4-2-21 as the 52 consecutive week period beginning with the first week as of which an insured worker first filed an initial claim for determination of his insured status. Typically, an individual can only draw regular unemployment benefits for twenty-six (26) weeks during the benefit period with possible federal unemployment compensation extending the period of time in which benefits might be received. After the close of the benefit year no additional benefits may be received based upon such claim. Eligibility must be established for each benefit period.
>
> Indiana Code Section 22-4-14-5 describes the eligibility criteria which an individual must meet during their base period. An individual must have at least $4,200.00 in total wage credits during the base period with at least $2,500.00 of such wage credits earned during the last two quarters of the base period. In addition, an individual must have total wage credits during the base period that are more than one and a half times the wages paid to

the claimant in the calendar quarter in which the individual's wages were highest.

The [ALJ] concludes that the claimant did not meet the eligibility criteria during her most recent benefit year because she had no wage credits from employment during her base period which included all of the calendar year 2012. Further, the [ALJ] concludes that the eligibility period for drawing benefits for her prior claim had already closed. According[ly], the claimant is ineligible to receive unemployment benefits due to the insufficient wage credits earned in her most recent base period.

**DECISION:** The claimant failed to timely file her request for an appeal but for good cause. The monetary determination represented by the Wage Transcript and Benefit prepared on April 10, 2013 is Affirmed. The claimant is ineligible to receive benefits.

Appellant's Appendix at 3-4; Exhibits at 15-16.

On September 10, 2013, Employee filed a letter appealing to the Board from the decision of the ALJ. In her letter, Employee stated that she would like to be issued "the remaining benefits" from her UI and EUC claims. Appellant's Appendix at 8. Employee attached certain documents to her appeal which had not been submitted to the ALJ, and the documents included a printout dated September 10, 2013 of Employee's claimant homepage showing her various claims (which included, for each claim, the claim's maximum benefit amount, weekly benefit amount, benefits paid to date, the remaining balance, and the status of the claim) and an online article posted on January 3, 2013, describing the U.S. House of Representatives' decision to renew federally-funded EUC benefits through 2013.

On October 7, 2013, the Board issued a decision in which it stated that no additional evidence was accepted by the Board and affirmed the decision of the ALJ,

6

adopting and incorporating the findings of fact and conclusions of law of the ALJ. Employee now appeals the Board's decision.

## DISCUSSION

The issue is whether the Board erred in concluding that Employee was not entitled to additional unemployment benefit payments. We note that, although Employee is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. Employee contends that she has submitted evidence from her WorkOne account that shows she has a remaining balance of $574 that has not been issued with her October 2011 claim, that all benefits should be paid to her, that the Board should have considered the documents she submitted with her appeal, and that this court should reverse the Board's decision and grant her additional weeks of benefits under her EUC claim. The Board maintains that Employee did not show good cause why the additional evidence she presented should be considered, the Board's decision that Employee could not claim benefits from a benefit period after the period had passed is in accordance with law and supported by the facts, and that Employee for the first time seeks to appeal the ending of her EUC benefits and she has waived that issue.

The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. Recker v. Review Bd. of Ind. Dep't of Workforce Dev., 958 N.E.2d 1136, 1139 (Ind. 2011) (citing McClain v. Review Bd. of

7

Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998), reh'g denied). Ultimate facts are facts that involve an inference or deduction based on the findings of basic fact. Id. (citing McClain, 693 N.E.2d at 1317). Where such facts are within the special competence of the Board, the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable. Id. (citing McClain, 693 N.E.2d at 1318).

To the extent Employee challenges findings of basic fact, our review of the record reveals substantial evidence of the findings of basic fact of the ALJ and the Board. See Recker, 958 N.E.2d at 1139.

*Employee's October 2011 Claim for UI Benefits*

With respect to Employee's October 2011 claim for UI benefits, the testimony before the ALJ and the ALJ's comments were consistent with the provisions of Ind. Code §§ 22-4. Ind. Code § 22-4-2-21 provides in part that a "'[b]enefit period' with respect to any individual means the fifty-two-consecutive-week period beginning with the first week as of which an insured worker first files an initial claim for determination of his insured status . . . ." Ind. Code § 22-4-12-4(a) provides in part that "the maximum total amount of benefits payable to any eligible individual during any benefit period shall not exceed twenty-six (26) times the individual's weekly benefit, or twenty-eight percent (28%) of the individual's wage credits with respect to the individual's base period, whichever is less."[6] Also, Ind. Code § 22-4-2-22 provides that a "'[v]alid claim' means a

---

[6] Employee's claimant homepage included in the appellant's appendix indicates that the maximum total amount of benefits payable to Employee during the benefit period beginning October 9, 2011 and ending October 6, 2012 was $2,584 and that she had been paid $2,010. The Wage Transcript and Benefit Computation related to the October 9, 2011 claim for UI benefits is not included in the

claim filed by an individual who has established qualifying wage credits and who is totally, partially, or part-totally unemployed; Provided, no individual in a benefit period may file a valid claim for a waiting period or benefit period rights with respect to any period subsequent to the expiration of such benefit period."

The DWD's Unemployment Insurance Claimant Handbook, under the heading "How Long May I Receive Benefits," states "[y]ou may draw regular unemployment insurance benefits for up to 26 weeks, or until your *maximum benefit amount* [] has been reached," that "[y]our claim is good through your *benefit year end (BYE)* date," that "[y]our benefit year consists of the 52 weeks beginning with the first week you filed your claim," and that "[y]our BYE date is listed on your home page." Unemployment Insurance Claimant Handbook (Rev. 12-13-2013), at 12, available at http://www.in.gov/dwd/files/Claimant_Handbook.pdf. As noted in the Claimant Handbook, in order to receive weekly unemployment benefits, a claimant must file weekly claim vouchers certifying certain information, including among other things the claimant's work search efforts, whether the claimant had any earnings and the amount of such earnings, whether the claimant refused an offer of work, and whether the claimant was ready, willing, and able to accept full-time work. Id. at 15. A claimant may not receive a full weekly benefit payment if the claimant does not file the required weekly claim voucher or if other information provided in the claim voucher necessitates a partial or full reduction of the benefit payment (such as the claimant received wages during the week, was unable to work, failed to look for full-time work, etc.). See id. at 14-16.

---

record, and Employee has not challenged the determination of the maximum payable benefits under the claim.

9

It is possible that a claimant may ultimately receive total unemployment benefit payments during a claim's benefit period which, in sum, are less than the claim's maximum benefit amount shown on the claimant's wage transcript and benefit computation or claimant homepage, and this could occur for a variety of reasons including, among others, a failure of the claimant to file weekly vouchers or a reduction of benefits based upon the information provided by a claimant as discussed in part above. The record in this case does not disclose the reason Employee did not receive the maximum benefit amount with respect to her October 9, 2011 claim during the claim's benefit period. Nevertheless, Employee has not cited to the record or authority to show that she is entitled to continue to receive UI benefits under the claim following the expiration of the benefit period on October 6, 2012, or that she submitted weekly claim vouchers for, and was otherwise eligible in all respects to receive, additional weekly benefit payments which were declined during the benefit period. Employee has not shown she was entitled to receive all or any portion of the remaining or unclaimed balance of $574 of her UI benefits as shown on her claimant homepage with respect to her October 9, 2011 claim.

*Employee's October 2012 Claim for EUC Benefits*

With respect to Employee's October 28, 2012 EUC claim, her May 28, 2013 appeal from the deputy's determination requested the remaining benefits of her initial UI claim only and her testimony during the hearing before the ALJ related to the remaining balance shown on her claimant homepage with respect to her UI claim and not to any

10

issue regarding the exhaustion or extension of her EUC claim.[7]  Further, Employee's

September 10, 2013 letter appealing from the ALJ's decision requested the remaining

benefits of her initial UI and EUC claims, and she did not specifically request or appeal

the denial of any request for an extension of her EUC benefits.[8]  Employee may not raise

the issue of the length or extension of her benefits under her EUC claim for the first time

on appeal.  See Miller v. Ind. Dep't of Workforce Dev., 878 N.E.2d 346, 353 (Ind. Ct.

App. 2007) (noting that we may find waiver where a party to an administrative appeal

raises an issue for the first time on appeal).

*Employee's April 2013 Claim*

Finally, with respect to Employee's April 7, 2013 claim, we note that Employee

states in her appellant's brief that she was not applying for new UI benefits but applying

---

[7] In her reply brief, Employee argues that she gave testimony at the hearing before the ALJ regarding not receiving her remaining balance and extending her EUC claim and cites to two pages of the hearing transcript.  The portions of the transcript to which Employee cites include her testimony regarding why she filed her May 28, 2013 appeal, namely, because her EUC benefits had ended, she visited a WorkOne office and was informed by a representative that her EUC claim benefit amount had been exhausted, and she learned of or requested at that time the remaining balance with respect to her initial UI benefits claim.  Employee specifically testified that she "was trying to get . . . the remaining balance from [her] initial claim and [her appeal] wasn't anything to do with the [EUC claim] benefits that [she] was getting."  Transcript at 22.  In short, Employee did not present argument or evidence before the ALJ or request any benefits on the grounds that she was entitled to additional benefits under her EUC claim.

[8] The copy of Employee's claimant homepage which she wished for the Board to consider after the hearing before the ALJ shows that the EUC claim had a start date of October 28, 2012 and an end date of December 28, 2013, that Employee's weekly benefit amount under the claim was $119, that Employee received a total of $3,615 under the claim, that there was no remaining balance with respect to the claim, and that her last voucher was paid on May 13, 2013.  Employee testified at the hearing before the ALJ that she was informed by a WorkOne representative that the benefit amount under the EUC claim had been exhausted.  When asked why Employee was unable to receive the remaining balance of her initial UI claim, Harris, apparently responding to Employee's question with respect to the EUC claim rather than the initial UI claim, testified that the benefits of that claim were exhausted, that the last benefit amount was paid on May 13, 2013, and that Employee received all the benefits of that claim.  The information on Employee's claimant homepage was consistent with the evidence before the ALJ and Board.

to receive the remaining balance of her October 2011 claim.[9]  We note that, under Ind. Code § 22-4-2-12, the four quarters in the calendar year 2012 constituted Employee's base period with respect to a claim for benefits filed on April 7, 2013, and that Harris and Employee testified that Employee had no eligible earnings or wages during that base period.  Accordingly, to the extent Employee filed a claim for UI benefits on April 7, 2013, Employee was ineligible for such benefits.  See Ind. Code § 22-4-2-12 (providing in part that an individual's base period with respect to a claim is the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit period); Ind. Code § 22-4-14-5(c) (providing wage credit requirements for eligibility for benefits and providing in part that an individual must have wage credits in a total amount of no less than $4,200 in the four calendar quarters of the individual's base period).

*Employee's Additional Evidence*

With respect to Employee's argument that the Board erred in failing to accept the evidence she wished to present following the hearing before the ALJ, we note that the decision to accept additional evidence is a decision left to the discretion of the Board. Telligman v. Rev. Bd. of Ind. Dep't of Workforce Dev., 996 N.E.2d 858, 865 (Ind. Ct. App. 2013) (citing Tiller v. Rev. Bd. of Ind. Dep't of Workforce Dev., 974 N.E.2d 478, 481 (Ind. Ct. App. 2012)).  "The rule requires a party offering additional evidence to show good cause why such evidence should be accepted and good reason why it was not

---

[9] However, in her reply brief, Employee states that she does not waive or concede any issues regarding the April 7, 2013 claim.

12

introduced before the ALJ."[10] Id. (citation omitted). We observe that Employee was notified that any documents she wished the ALJ to consider must be received by the DWD at least twenty-four hours before the scheduled hearing and that Employee did not submit the documents, which were available to her, at that time.[11]

Employee's argument is premised on her belief that the additional evidence, if considered by the ALJ and Board, would have disclosed that she is entitled to the amount of $574 shown as the remaining balance on her claimant homepage with respect to her October 2011 claim for UI benefits. However, we cannot say that the Board, if it had accepted and considered the additional evidence Employee wished to present, would have credited the additional evidence in the same way Employee does.

The evidence before the ALJ and Board included the testimony of Employee and Harris regarding the October 9, 2011 claim for UI benefits. Specifically, Employee testified that, after the end date of the benefit period, her online claimant homepage showed there was a remaining balance of $574 and that the claim was expired. Harris testified that Employee was not eligible to receive any portion of the amount of $574 shown as a remaining balance on Employee's claimant homepage following the expiration of the claim's benefit period on October 6, 2012. The additional evidence

---

[10] 646 IAC 5-10-11(b) (2011) provides:

> Each hearing before the review board shall be confined to the evidence submitted before the administrative law judge unless it is an original hearing. Provided, however, the review board may hear or procure additional evidence upon its own motion, or upon written application of either party, and for good cause shown, together with a showing of good reason why the additional evidence was not procured and introduced at the hearing before the administrative law judge.

[11] Employee stated at the hearing that she did not submit a copy of her claimant homepage because she believed that the information was already available to the ALJ as she accessed the information online from DWD's system.

Employee wished to present to the Board consisted in part of a copy of Employee's claimant page, printed on September 10, 2013, showing that the benefit period for the claim was October 9, 2011 to October 6, 2012, that the maximum benefit that could be paid to Employee under the claim was $2,584, that Employee's weekly benefit amount was $134, that $2,010 had been paid to Employee under the claim, that the remaining balance under the claim was $574, and that the claim's status, as of September 10, 2013, was expired. Employee does not show, and we cannot say, that this additional evidence supports a determination other than the one made by the ALJ and Board.

In addition, the other document included in the evidence Employee wished for the Board to consider consisted of an article posted on January 3, 2013, describing the U.S. House of Representatives' decision to renew federally-funded EUC through 2013. However, as discussed above, Employee did not raise an issue in the proceedings before the ALJ or Board below regarding the length or extension of her benefits under her EUC claim.

We conclude that the Board did not err or abuse its discretion when it did not accept her additional evidence. See Telligman, 996 N.E.2d at 866 (finding that we cannot say that the Board, if it had accepted and considered the additional evidence Telligman wished to present, would have credited the additional evidence in the same way Telligman does, and holding that the Board did not err or abuse its discretion when it did not accept Telligman's additional evidence); Tiller, 974 N.E.2d at 482 (holding that we had "no reason to assume the Board would have credited the additional evidence in

14

the same way [the claimant] does" and that the Board did not abuse its discretion when it did not consider the claimant's additional evidence).

## CONCLUSION

Based upon the record, we conclude that the ALJ and Board did not err in finding that Employee was not entitled to additional unemployment benefit payments and that the Board did not abuse its discretion or err in declining to accept additional evidence. Accordingly, and for the foregoing reasons, we affirm the decision of the Board.

Affirmed.

ROBB, J., and BARNES, J., concur.