## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2020, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas B. O'Farrell
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.G.,<br>*Appellant-Respondent,*<br><br>v.<br><br>A.G.,<br>*Appellee-Petitioner.* | March 30, 2020<br><br>Court of Appeals Case No.<br>19A-PO-1630<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable William J. Hughes,<br>Judge<br><br>Trial Court Cause No.<br>29D03-1904-PO-3224 |

**Tavitas, Judge.**

## Case Summary

[1] T.G. appeals the trial court's denial of his motion to set aside A.G.'s order for protection. We affirm.

## Issue

[2] T.G. raises one issue on appeal, which we restate as whether the trial court violated T.G.'s due process rights by entering an order for protection against him based on evidence presented at an ex parte hearing.[1]

## Facts

[3] T.G. and A.G. married in October 2016. In September 2018, A.G. left the couple's marital home and filed for dissolution of marriage. Dissolution of marriage proceedings began, and on April 2, 2019, A.G. filed a petition for an order for protection alleging that she was a victim of stalking by T.G.

[4] The petition alleged that, on October 1, 2018, T.G. appeared at A.G.'s place of employment "unannounced" and was asked to leave. Appellant's App. Vol. II p. 7. A.G. alleged that T.G. returned to her place of employment despite the request that he not return; however, A.G. did not specify the time or date of T.G.'s second visit in her petition. *Id.* The petition also alleged that, since

---

[1] While T.G.'s motion was titled a "Verified Motion to Set Aside Protective Order and Motion to Recuse," on appeal, T.G. focuses only on the trial court's denial of T.G.'s motion to set aside the order for protection. Appellant's App. Vol. II p. 25. In his conclusion, however, T.G. argues that the trial court judge should be "recused for having heard *ex parte* testimony that cannot now be un-heard." Appellant's Br. p. 16. This one-sentence argument, without citation to authority, constitutes waiver of the argument. *See* Ind. App. R. 46(A)(8).

September 22, 2018, T.G. has called or sent text messages to A.G. numerous times despite her "many requests" for T.G. to stop. *Id.*

[5] After A.G. filed her petition, the trial court completed an entry on the chronological case summary ("CCS") on April 3, 2019, stating: "petition reviewed. Petition is not sufficiently specific to permit ex parte relief. Cause set for hearing on April 10, 2019 at 8:00am. Notice to both parties." *Id.* at 3. The hearing was marked on the CCS as a "clarification hearing notice to both parties." *Id.* Nothing in the CCS or in the record indicates that T.G. received notice of the hearing.

[6] A.G. appeared pro se at the hearing. Neither T.G. nor T.G.'s attorney was present. At the hearing, A.G. testified that she asked T.G. to stop contacting her on February 22, 2019, and that from February 22 to April 4, 2019, T.G. sent A.G. 205 text messages and called A.G. twice before A.G. blocked T.G.'s number. A.G. also testified that she asked T.G. to stop contacting her on December 31, 2018.[2] A.G. testified that she saw T.G. sitting in his vehicle in the parking lot at her church and at her place of employment watching the building.

---

[2] A.G. testified: "—and 365 texts later to February 22nd, I asked him again to stop." Tr. Vol. II p. 8. We understand this to mean that T.G. sent A.G. 365 text messages between December 31, 2018, and February 22, 2019.

[7] On April 10, 2019, the trial court entered an ex parte order for protection, finding that stalking occurred. The trial court ordered that the ex parte order for protection would expire on April 10, 2021.

[8] On April 12, 2019, the Hamilton County Sheriff's Office filed the sheriff's return of service with the clerk of the court, noting T.G. was served with the ex parte order for protection on April 11, 2019. According to T.G., he first became aware of the proceedings when the ex parte order for protection was served on him on April 11, 2019. On April 15, 2019, T.G. filed a request for a hearing pursuant to Indiana Code Section 34-26-5-10(a).

[9] The trial court held a hearing on T.G.'s motion on May 15, 2019. At that hearing, A.G. testified as follows when asked by the trial court why she was requesting an order for protection:

> What I presented to you on April 10th, sir, was just the obsessive, [ ], constant texting, sixteen hundred and twelve text messages from the time that I left our marital home. Several text messages after two attempts of asking him to stop contacting me. First being on December 31st asking him to stop contacting me, texting me, asking him to proceed with the divorce which has been stalled. [ ], from December 31st to February 22nd, he texted me 314 times, asking me to go away for the weekend, dinners, dates, etc. Come back home. [ ], on Decem-- on February 22nd, I asked him again to stop contacting me. From that point to March 28th, which was the last record I could pull from my AT&T account, another 196 text messages, again saying, asking me to go away on trips, weekends away, etc. [ ], the obsessive contact is why I came and filed this after several months, not immediately after leaving our marital home, but after several attempts of asking him [to] stop. He, as I mentioned

before, sir, [ ], he has shown up at my employment, not recently, but without notice. My, [ ], group meeting sites unannounced which caused fear, [ ], in me and I just feel that since April 10th, when I came in front of you sir, to now, I felt protected. I felt that there are consequences for behavior of continuance and that's why I came.

Tr. Vol. II pp. 22-23. After further discussion, the trial court clarified with A.G.: "Mam, your reference to meeting with me on April 10th is the ex parte hearing that was heard in this case in order for there to be a clarification of the petition. Is that correct?" *Id.* at 23. A.G. answered affirmatively.

[10] At the close of the hearing, the trial court stated that it would not dismiss A.G.'s order for protection against T.G. because the trial court "already made a finding in regards to those issues and it's not been rebutted today." *Id.* at 48.[3] After the hearing, on May 15, 2019, the trial court entered an "Order for Protection" finding that stalking had occurred, which justified the issuance of the Order for Protection. Appellant's App. Vol. II p. 22. This Order for Protection expires on May 15, 2021.

[11] On June 11, 2019, T.G. filed a "Verified Motion to Set Aside Protective Order and Motion to Recuse." *Id.* at 25. The trial court denied T.G.'s motion without a hearing and found:

---

[3] T.G. does not argue that the evidence was insufficient to support renewing the order for protection except for his statement that the testimony at the hearing "did not support the issuance of a protective order." T.G. cites no authority for his argument and does not articulate why it was not supported and, thus, his argument is waived. Ind. Appellate Rule 46(A)(8). *See S.H. v. D.W.,* 139 N.E.3d 214 (Ind. 2020).

1. Respondent objects to the *ex parte* hearing held in this cause on April 10, 2019. Although the Court sent notice to Respondent for that hearing, Respondent did not receive that notice until "the day after the ex parte hearing." Para. 7, Respondent's Motion at 2. According to Respondent, "the Court's consideration of this ex parte evidence [from the ex parte hearing on April 10, 2019] gives rise to the appearance of inequity and impartiality," Para. 14, id. at 4, such that the undersigned judge should vacate the permanent protection order issued after hearing on May 15, 2019, and then recuse himself from both this cause and the parties' dissolution action[.] . . .

2. Respondent's objection is not well taken. In Indiana, an *ex parte* hearing on a petition for an order for protection is an entirely proper and common way for judicial officers to clarify whether an *ex parte* order for protection should issue in the first instance. In essence, that purpose is why the Indiana Judicial Qualifications Commission has already issued an advisory opinion to approve the practice. See Protection Order Deskbook (Prepared by the Protection Order Committee of the Judicial Conference of Indiana) at 3-7 to 3-9, available at . . . .[4] In such circumstances, an *ex parte* hearing merely allows a judicial officer to clarify allegations that, had they been obviously sufficient on their face in the petition, would have justified issuance of an *ex parte* order for protection – necessarily without prior notice to a respondent. Thus, although the Court sent notice of the *ex parte* hearing in this case to Respondent as a courtesy, notice to respondents in such instances is not necessary. The fact that Respondent did

---

[4] The Order for Protection Deskbook states that an ex parte hearing is permissible "to determine whether an ex parte order of protection should be issued." *See Protection Order Deskbook,* Protection Order Committee of the Judicial Conference of Indiana, https://www.in.gov/judiciary/files/protection-order-deskbook.pdf, p.3-7 (last visited March 3, 2020).

not receive notice of the *ex parte* hearing until the day after the hearing is therefore of no moment.

Appellant's App. Vol. II pp. 34-35.  T.G. now appeals.

## Analysis

[12] At the outset, we note that A.G. did not file an appellee's brief.  "When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error."  *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248 (Ind. Ct. App. 2012), *trans. denied*.  "In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it."  *Id.*  "Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf."  *Id.*

[13] T.G.'s "Verified Motion to Set Aside Protective Order and Motion to Recuse" failed to cite an Indiana trial rule or authority for the trial court to set aside the Order of Protection.[5]  Our reading of T.G.'s motion and the trial court's corresponding order is that the trial court treated T.G.'s motion as a motion to correct error pursuant to Indiana Trial Rule 59.  "We generally review the denial of a motion to correct error for an abuse of discretion."  *Fox v. Bonam,* 45 N.E.3d 794, 798 (Ind. Ct. App. 2015).

[5] T.G. does cite Indiana Trial Rule 4.1 regarding service of process and argues the trial court did not acquire personal jurisdiction over T.G.

[14]     T.G. argues that: (1) he did not receive notice of the ex parte hearing; (2) the trial court heard the evidence to support the order for protection at the ex parte hearing; (3) after T.G. requested a hearing following the trial court's issuance of the ex parte order for protection, he was unable to rebut evidence presented at the ex parte hearing because he did not know what that evidence was; and (4) the trial court relied on the evidence from the ex parte hearing when granting the subsequent order for protection. Thus, T.G. argues his due process rights were violated. "'Whether a party was denied due process is a question of law that we review *de novo*.'" *P.S. v. T.W.,* 80 N.E.3d 253, 255 (Ind. Ct. App. 2017) (quoting *Miller v. Indiana Dept. of Workforce Dev.,* 878 N.E.2d 346, 351 (Ind. Ct. App. 2007)).

[15]     Indiana Civil Protection Order Act ("CPOA") is codified at Indiana Code Section 34-26-5. Indiana Code Section 34-26-5-9[6] states in relevant part:

> (a) If it appears from a petition for an order for protection or from a petition to modify an order for protection that domestic or family violence has occurred or that a modification of an order for protection is required, a court *may:*
>
> > (1) *without notice or hearing, immediately issue an order for protection ex parte or modify an order for protection ex parte*; or

---

[6] Each version of the statute we cite in our decision is the version of the CPOA in effect in early 2019 when A.G. filed her petition.

(2) upon notice and after a hearing, whether or not a respondent appears, issue or modify an order for protection.

* * * * *

(b)[7] A court may grant the following relief without notice and hearing in an ex parte order for protection or in an ex parte order for protection modification:

(1) Enjoin a respondent from threatening to commit or committing acts of domestic or family violence against a petitioner and each designated family or household member.

(2) Prohibit a respondent from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with a petitioner.

* * * * *

(4) Order a respondent to stay away from the residence, school, or place of employment of a petitioner or a specified place frequented by a petitioner and each designated family or household member.

* * * * *

---

[7] This section is codified in the current version of the statute in subsection (c).

> (8) Order other relief necessary to provide for the safety and welfare of a petitioner and each designated family or household member.

(emphasis added).

[16] A.G.'s petition alleged stalking by T.G. Stalking, for purposes of the CPOA, is included in the definition of "domestic or family violence" pursuant to Indiana Code Section 34-6-2-34.5. Stalking is defined in Indiana Code Section 35-45-10-1 as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened."

[17] Indiana Code Section 34-26-5-9(a) gives authority to the trial courts to issue ex parte orders for protection without notice. Indiana Code Section 34-26-5-9(b) gives trial courts authority to issue certain relief without the requirement of "notice and hearing" in an ex parte order for protection.[8]

[18] The relief the trial court granted in the ex parte order was that: (1) T.G. was enjoined from threatening or committing acts of stalking against A.G. and her family; (2) T.G. was prohibited from harassing or contacting A.G. directly or indirectly; and (3) T.G. was ordered to stay away from A.G.'s home, place of

---

[8] We note the inconsistency between the two sections of the statute: in some portions of the statute, the legislature uses the phrase "notice and hearing," whereas in other portions of the statute, the legislature uses the phrase "notice or hearing." *See* Ind. Code § 34-26-5-9(a) and (b) (now I.C. § 34-26-5-9(a) and (c)).

employment, and church. This relief is permitted by the ex parte statute. *See* I.C. § 34-26-5-9(b) (describing the notice allowed for ex parte orders for protection).

[19] After the ex parte order for protection was issued, T.G. requested a hearing pursuant to Indiana Code Section 34-26-5-10,[9] and the trial court held the hearing on May 15, 2019, as required. At the May 15 hearing, A.G. repeated the substance of her allegations that T.G. sent A.G. hundreds of messages, despite A.G. asking T.G. to stop, and that T.G. appeared at A.G.'s place of employment unannounced, which caused her fear. T.G. had the opportunity to respond, present evidence, and cross-examine A.G. T.G. was given the opportunity for a hearing, and he fully participated in the hearing.[10] *See Essany v. Bower,* 790 N.E.2d 148, 152 (Ind. Ct. App. 2003) (finding a hearing under the CPOA requires the petitioner the opportunity to present testimony, call witnesses, and cross-examine any witnesses). Following the presentation of

---

[9] Indiana Code Section 34-26-5-10 states in relevant part:

    (a) Except as provided in subsection (b), if a court issues:

      (1) an order for protection ex parte; or

      (2) a modification of an order for protection ex parte;

    and provides relief under section 9(b) of this chapter, upon a request by either party not more than thirty (30) days after service of the order or modification, the court shall set a date for a hearing on the petition. The hearing must be held not more than thirty (30) days after the request for a hearing is filed unless continued by the court for good cause shown. The court shall notify both parties by first class mail of the date and time of the hearing.

[10] We acknowledge the trial court's statement that it already made findings at the ex parte hearing. Still, A.G. presented evidence at the second hearing, and T.G. does not argue that the evidence A.G. presented at the second hearing is insufficient to support an order for protection except as discussed in Footnote 3, *supra*. Any error in the trial court's language is harmless.

evidence, the trial court issued the second order for protection dated May 15, 2019.[11]

[20] The trial court found that A.G. proved the statutory requirements for an order for protection against T.G., and T.G. does not challenge the sufficiency of those allegations. The trial court was not required to give notice to T.G. before the trial court issued the ex parte order for protection. T.G.'s due process rights were not violated. Accordingly, we cannot say the trial court abused its discretion in denying T.G.'s motion to set aside.[12]

## Conclusion

[21] The trial court did not abuse its discretion in denying T.G.'s motion to set aside. We affirm.

[22] Affirmed.

Najam, J., and Vaidik, J., concur.

---

[11] The second order for protection granted similar relief, except that: (1) the second order for protection expired May 15, 2021, instead of April 10, 2021; (2) the second order for protection did not require T.G. to stay away from A.G.'s church; and (3) in the second order for protection, the trial court noted that T.G. was "Brady disqualified," and therefore, could not possess a firearm. Appellant's App. Vol. II p. 21.

[12] T.G., in his brief, makes reference to a "permanent protective order." Appellant's Br. p. 14. We understand this is how the trial court identified the order for protection issued on May 15, 2019, on the CCS. Nonetheless, the order for protection issued in May 15, 2019, indicates that it will expire on May 15, 2021. *See* Appellant's App. Vol. II p. 24.